CHRYSLER CAPITAL CORPORATION, Plaintiff–Appellant, Cross Appellee,

v.

Larry C. LAVENDER, James H. White, III, Defendants–Appellees, Cross Appellants.

No. 90–7177.

United States Court of Appeals, Eleventh Circuit.

June 24, 1991.

Paul A. Liles, Richard F. Ogle, David O. Upshaw, Schoel, Ogle, Benton, Gentle & Centeno, Birmingham, Ala., for plaintiff-appellant, cross-appellee.

Clarence M. Small, Jr., Richard E. Smith, Rives & Peterson, Birmingham, Ala., for defendants-appellees, cross-appellants.

Before JOHNSON and BIRCH, Circuit Judges, and MERHIGE *, Senior District Judge.

BIRCH, Circuit Judge:

This diversity case involves the issue of whether a lessor's refusal to consent to a proposed sublease by its lessee was unreasonable under Alabama law. The lessor, Chrysler Capital Corporation ("Chrysler"), sought damages against Larry C. Lavender and James H. White, III for breach of a Guaranty Agreement ("Guaranty") in connection with the lease of a hydraulic bumper press (the "Press"). Lavender and White responded that the default was caused by Chrysler's unreasonable refusal to consent to a proposed sublease of the Press to Southern Stampings, Inc. ("SSI"), and also alleged that Chrysler intentionally interfered in their contractual or business relationship with SSI. After a jury trial in

---

* Honorable Robert R. Merhige, Jr., Senior U.S. District Judge for the Eastern District of Virginia, sitting by designation.

the United States District Court for the Northern District of Alabama, the jury excused Lavender and White from further responsibility under the lease agreement. The jury verdict also held Chrysler responsible for intentional interference with contractual or business relations, but the trial judge subsequently set aside the jury's finding of intentional interference. Both parties have appealed to this court. For the reasons that follow, we AFFIRM.

## I. BACKGROUND

Lavender and White are the principal owners of American Bumper Company ("ABC"), which sold recycled automobile bumpers and tractor-trailer bumpers. The business required bumper stamping and plating equipment. In late 1985, ABC sought to purchase the Press for $170,000 and was referred to Chrysler for financing.[1] In November, 1985, the parties agreed to terms for a five-year lease, and ABC retained an option to purchase the Press for its fair market value at the end of the lease term. ABC agreed to pay Chrysler approximately $3,400 per month, and also agreed not to sublease the Press or assign its rights under the lease without prior approval from Chrysler. At that time, Lavender and White executed the Guaranty to secure ABC's debt to Chrysler.

By mid–1986, ABC was experiencing financial difficulty. Bob Groh, the president of SSI, contacted Lavender in August, 1986 and offered to purchase all of ABC's bumper stamping assets, including the Press. Groh suggested that SSI could sell stamped bumpers to ABC for plating, which would allow ABC to remain in business after the sale. Lavender was interested in this proposal and contacted Chrysler to determine the remaining balance on the lease. He was advised that ABC owed $141,000 at that time.

Lavender and Groh negotiated a tentative agreement whereby SSI would purchase certain equipment from ABC and assume the lease obligations on the Press. The documents were signed on December 31, 1986, but the transaction was closed in escrow because ABC had not obtained Chrysler's written permission to assign its obligations under the lease, and certain liens on other equipment had not yet been released. In January, 1987, Lavender contacted Chrysler and was told that the buyout value of the lease was $248,000, because Chrysler wanted to recoup prospective investment tax credits, sales tax, and the fair market value of the Press in addition to the total of the remaining lease payments. ABC and SSI were unwilling to satisfy the lease on those terms.

Groh next offered to sublease the Press for $2400 per month, with an option to purchase at the end of the lease term if the price was acceptable. Under this arrangement, ABC would pay Chrysler $1,000 per month on the lease, but ABC would be reimbursed by SSI if SSI exercised its option to purchase the Press. The Guaranty would remain in effect, and ABC would remain liable on the lease. Chrysler tentatively agreed to approve the revised transaction if ABC and SSI provided proof of insurance, an address where the Press would be located, and a landlord's consent and waiver to permit Chrysler to enter the property and repossess the Press upon default by ABC. ABC and SSI thought they could satisfy these conditions, and prepared a revised sublease agreement that included an escape clause for SSI if Chrysler did not consent to the sublease by April 15, 1987.

On April 8, 1987, Chrysler informed Lavender that it would not approve the sublease unless SSI agreed to assume all of ABC's obligations under the original lease. This new condition had not been discussed previously and was unacceptable to SSI. Without Lavender's knowledge or consent, Groh telephoned Chrysler regarding this matter and allegedly was told that ABC was delinquent on its lease payments and that the Press would be available for $85,000 if ABC defaulted on the lease. Groh

---

1. Chrysler is the successor in interest to Chrysler Financial Corporation and E.F. Hutton Credit Corporation. In this opinion, references to "Chrysler" will be deemed to include its predecessors in interest.

cancelled the sublease with ABC on May 21, 1987. Lavender unsuccessfully tried to resurrect the sublease during conversations with Groh and Chrysler through August, 1987.

On November 10, 1988, Chrysler filed its complaint in this action against Lavender and White for breach of the Guaranty. Chrysler sought $133,963.40, plus costs and attorneys' fees, as damages for ABC's default on the lease and Lavender and White's refusal to honor the terms of the Guaranty. Lavender and White answered the complaint and added two counterclaims, alleging that Chrysler's refusal to consent to the sublease was unreasonable under Alabama law and that Chrysler intentionally interfered in ABC's relationship with SSI. Lavender and White sought damages of $250,000 for Chrysler's refusal to consent to the sublease, $500,000 for intentional interference with contractual or business relations, plus a declaration that the lease agreement and the Guaranty were void as a result of Chrysler's conduct.

The jury found for Lavender and White and excused ABC from further performance under the lease agreement. The jury also determined that Chrysler was liable for intentional interference and awarded Lavender and White damages of $225,-068.80. Chrysler moved for judgment notwithstanding the verdict ("JNOV") or a new trial. The district judge denied the motion, but set aside the jury's finding on the intentional interference claim. Lavender and White appeal that decision, and Chrysler appeals the denial of its post-trial motion.

## II. DISCUSSION

### A. *Chrysler's Appeal*

■ We apply different standards to review the district court's decision to deny Chrysler's alternative motions for JNOV or new trial. A motion for new trial is reviewed under the abuse of discretion standard. *Sentry Indemnity Co. v. Peoples*, 856 F.2d 1479, 1481 (11th Cir.1988). However, on a motion for JNOV, we must independently determine whether the facts and inferences point so overwhelmingly in fa-

vor of the movant, Chrysler, that reasonable people could not arrive at a contrary verdict. *See Carter v. City of Miami*, 870 F.2d 578, 581 (11th Cir.1989).

■ Under Alabama law, "a landlord may not unreasonably and capriciously withhold his consent to a sublease agreement. The landlord's rejection should be judged under a test applying a reasonable commercial standard." *Homa–Goff Interiors, Inc. v. Cowden*, 350 So.2d 1035, 1038 (Ala.1977). The issue of commercial reasonableness is a jury question. *Id.; see also Leasing Service Corp. v. River City Constr. Co.*, 743 F.2d 871, 878 (11th Cir. 1984). In this case, the jury found that ABC was excused from further performance under the lease because Chrysler's refusal to consent to the proposed sublease was unreasonable.

At trial, Lavender testified that he contacted Ron M. Sperier, a District Operations Manager for Chrysler, in January, 1987 regarding the proposed sublease. He was told that the sublease could be approved if ABC requested approval in writing and provided: (1) a landlord's consent and waiver, (2) proof of insurance on the Press, and (3) an address where the Press would be located if the sublease was approved. R2–83. Bob Groh at SSI signed and executed the landlord's consent and waiver and returned the document to Chrysler. R1–10–Affidavit of Ron M. Sperier at 3. Lavender testified that he provided Sperier with the new location of the Press, and Groh testified that SSI was willing and able to provide proof of insurance. R2–87; R3–188.

Lavender introduced evidence that his attempt to sublet the Press was unsuccessful because Chrysler later added a fourth condition for final approval of the agreement. That condition was included in an Addendum to the Second Sublease prepared by Chrysler, and would have required SSI to become liable for all of ABC's obligations under the lease. Defendants' Exhibit 42 at 3. SSI refused to sign the Addendum, and the sublease was never approved. Lavender and White argued that the fourth con-

dition was unreasonable because it would have placed Chrysler in a better position under the sublease to SSI than it occupied under the lease to ABC. Without the fourth condition, ABC and the guarantors, Lavender and White, would have remained fully obligated on the lease. Therefore, Chrysler would have had the same security under the sublease that it accepted upon approval of the original lease to ABC.

■ The jury could reasonably conclude that Chrysler added the fourth condition because ABC's uncertain financial condition led Chrysler to seek additional security from SSI. However, a refusal to consent may be considered arbitrary and unreasonable if the landlord conditions his consent upon approval of a new agreement that changes the terms of the original lease. *See, e.g., B.M.B. Corp. v. McMahan's Valley Stores,* 869 F.2d 865, 869 (5th Cir.1989). The evidence supports the jury's finding that Chrysler's refusal to consent to the sublease was commercially unreasonable. Chrysler's arguments on the reasonableness of its failure to consent are not implausible, but they are not strong enough to preclude reasonable jurors from reaching a contrary conclusion. Accordingly, Chrysler's motion for JNOV was properly denied. Moreover, the district court did not abuse its discretion by denying Chrysler's alternative motion for a new trial under these circumstances.

### B. *Lavender and White's Appeal*

The jury awarded Lavender and White $225,068.80 in damages on their counterclaim for intentional interference with contractual or business relations. The district judge set aside the factual finding of intentional interference, and Lavender and White appeal that decision. We apply the same standard of review on this issue that we used to consider Chrysler's motion for JNOV, which is whether the facts and inferences point so strongly in favor of Chrysler that no reasonable jury could reach a contrary verdict. *See Carter v. City of Miami,* 870 F.2d at 581.

■ The Supreme Court of Alabama requires proof of five elements to maintain a claim for intentional interference with con-

tractual or business relations. The elements are: (1) the existence of a contract or business relation; (2) defendant's knowledge of the existence of that relationship; (3) intentional interference in the relationship by the defendant; (4) an absence of justification for the interference; and (5) damage to the plaintiff as the result of defendant's interference. *Gross v. Lowder Realty Better Homes and Gardens,* 494 So.2d 590, 597 (Ala.1986).

■ Lavender and White contend that Chrysler intentionally interfered in ABC's relationship with SSI when it told Groh that ABC was in danger of defaulting on the lease agreement. Lavender and White argued at trial that Chrysler abused its position as a creditor of ABC by improperly providing credit information to SSI without ABC's knowledge or approval.

It is undisputed that ABC and SSI had a business relationship and that Chrysler knew the relationship existed. A jury could also reasonably conclude that Chrysler interfered in the relationship. However, there is no evidence in the record that any interference was intentional and unjustified. Chrysler acted to protect its interest in the lease agreement, and Lavender and White did not offer any evidence showing that Chrysler deliberately attempted to interfere in ABC's relationship with SSI.

Lavender and White also alleged that they were damaged by the interference in the amount of Chrysler's claimed damages under the lease. Brief of Appellees/Cross Appellants Larry C. Lavender and James H. White, III at 27. They offered no proof of damages at trial, however, and any damages resulting from the lease evaporated when the jury excused ABC from further performance on the agreement. Without proof of damages, the claim of intentional interference cannot stand. *See Gross,* 494 So.2d at 597. Accordingly, we AFFIRM the district court's decision to set aside the jury's finding of intentional interference.

AFFIRMED.