[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JULY 24, 2008
THOMAS K. KAHN
CLERK

No. 07-11534

_____

D.C. Docket No. 05-01038-CV-F-N

MAC East, LLC, a Limited Liability Corporation,

Plaintiff-Appellee,

versus

SHONEY'S, a Limited Liability Company,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Alabama

_____

**(July 24, 2008)**

Before BLACK, CARNES, and COX, Circuit Judges.

COX, Circuit Judge:

This diversity case involves a commercial real estate lease and a proposal by

the assignee of that lease to sublease the real estate to a third party. A significant

issue in this case arises out of a consent clause in the assignment, which gives the

assignor "sole discretion" to withhold consent to the assignee's proposed sublease. We certify this issue to the Alabama Supreme Court because it is dispositive of part of the case and Alabama law is unclear.

## I. Background

The facts of this case are relatively simple and generally not in dispute. In April 1979, Shoney's, Inc.,[1] entered into a ground lease as tenant of certain property located in Montgomery, Alabama, at an initial annual rent of $16,000.00. (R.1-16, Powers Aff., Ex. A at 2 ¶ 4.) Shoney's later constructed a building on the property. In February 2002, Shoney's assigned its rights under the ground lease to MAC East, LLC, which is in the commercial real estate business. (R.1-43, Pl.'s Ex. 5) (the "Assignment Agreement"). MAC East assumed Shoney's obligations under the ground lease, the rent for which by then had increased to $21,120.00. (R.1-16, Powers Aff., Ex. A at 2 ¶ 4.) Paragraph 19 of the Assignment Agreement contains the following provision:

> Assignee [MAC East] shall not enter into any assignment or sublease of any portion of the Property or the improvements thereon without the prior written consent of Assignor [Shoney's] . . . which Assignor [Shoney's] may withhold in its sole discretion.

---

[1] Shoney's was a Tennessee corporation in 1979. It has since converted to a limited liability company, and now operates under the name Sholand, LLC. We continue to refer to this entity as Shoney's.

2

(R.1-43, Pl.'s Ex. 5, at 8 ¶ 19) ("Paragraph 19").

In April 2005, MAC East made a non-binding proposal to sublease the property to City Café Diners ("City Café"), at a "Minimum Annual Rent" of $77,350.00 per year for the first five years. (R.1-43, Pl.'s Ex. 18.) The proposal designated MAC East as the landlord, and "City Café Diners, or entity to be satisfactory to Landlord" as the tenant. The proposal was "subject to the provisions of the original Ground Lease and Assignment and Assumption of Lease, and may require the approval of third parties under those agreements." (*Id*. at 2.) Jimmy Tselios, who signed the proposal on behalf of City Café, agreed to personally guarantee the proposed sublease for five years.

In May 2005, MAC East informed Shoney's in writing that it had found an "operator" interested in subleasing the property. MAC East included in this letter financial statements of the guarantor, Tselios, and of two similar operations doing business as "City Café Diner." (R.1-43, Pl.'s Ex. 12, at 5, 7.) MAC East acknowledged that the Assignment Agreement required it to obtain Shoney's consent before it could sublease the property. Later that month, MAC East submitted to Shoney's a proposed sublease between MAC East and an entity called Pam Enterprises, Inc. (R.1-43, Pl.'s Ex. 9.) Under the proposal, Pam Enterprises had 120

days to open and begin operating a restaurant—presumably a City Café Diner. At the expiration of this period, around November 15, 2005, rent would become due at a minimum annual rate of $77,350.00 for the first five years. (R.1-14, Ex. C.)

In July 2005, Shoney's notified MAC East that it was unwilling to consent to the sublease unless MAC East paid Shoney's $70,000 and negotiated its release from the ground lease, or paid Shoney's $90,000, in which case Shoney's would remain liable on the ground lease. (R.1-14, Surles Aff., at 2 & Ex. A.) MAC East refused the terms of Shoney's consent and never executed a sublease with City Café. MAC East did not sublease the property until June 2006.

In September 2005, MAC East filed a complaint in Alabama state court for breach of the Assignment Agreement and for tortious interference with business relations.[2] Shoney's removed the case to federal court alleging diversity of citizenship jurisdiction.[3] MAC East filed a Partial Motion for Summary Judgment,[4] and Shoney's filed a Motion for Summary Judgment. On January 8, 2007, the district

---

[2]     MAC East also sought a declaratory judgment challenging Shoney's attempt to condition its consent to sublease on the receipt of additional payments. The parties agree this claim is moot because Shoney's consented to MAC East's subleasing the premises in June 2006 to a different subtenant.

[3]     On March 12, 2008, this court remanded the case to the district court for the purpose of determining whether diversity jurisdiction existed. The district court, on the parties' joint stipulation of the facts, determined that complete diversity of citizenship exists between the parties. (R.1-55.)

[4]     MAC East's motion was "partial" because it sought a ruling on liability, not damages.

court granted MAC East's motion and denied Shoney's motion. The court first held that Shoney's breached the Assignment Agreement by unreasonably refusing to consent to MAC East's proposed sublease. The court said that although the Assignment Agreement gave Shoney's the "sole discretion" to consent to the proposed sublease, it did not permit Shoney's to arbitrarily and capriciously refuse consent, in part, because the Assignment Agreement "does not explicitly express such a standard of discretion." (R.1-40 at 10.) Instead, the court found that under Alabama law, Shoney's refusal to grant consent was subject to a commercial reasonableness standard. It then ruled that "[t]he undisputed evidence before this Court establishes as a matter of law that Shoney's demand for additional payment, which was an additional term not included in Paragraph 19, was unreasonable and MAC East is therefore entitled to summary judgment on its breach of contract claim." (*Id.* at 10.)

The court also granted summary judgment to MAC East on its tortious interference claim. The court began by noting that although MAC East never entered into a binding contract with City Café, Alabama law permitted a tortious interference claim when the plaintiff merely has a "business relation" with a third party. The court said that, at a minimum, Shoney's request of additional payments in exchange for consent constituted coercion, meaning that Shoney's intentionally interfered with the business relation. The court then turned to the question of whether Shoney's was a

5

stranger to the "contract" between MAC East and City Café because "a 'party to a contract cannot, as a matter of law, be liable for tortious interference with the contract.'" (*Id.* at 13 (quoting *Bama Budweiser v. Anheuser-Busch*, 611 So. 2d 238, 247 (Ala. 1992)).) The court concluded that "by requiring additional sums of money, an action not authorized by the contract, Shoney's effectively became a non-party or stranger to the business relation between MAC East and City Café." (*Id.* at 14.) Consequently, it granted summary judgment to MAC East on this claim, and denied summary judgment to Shoney's.

The court held a separate damages hearing in which MAC East called three witnesses and offered numerous exhibits. Shoney's did not call any witnesses, but did cross-examine MAC East's witnesses. After the hearing, the court entered a final judgment awarding MAC East $78,732.28, including interest from June 15, 2006. The court also apparently awarded attorney's fees, although the judgment did not specify how much of the award was attributable to attorney's fees. The court did not enter written findings of fact regarding MAC East's damages.

Shoney's appeals, challenging the district court's denial of its motion for summary judgment, the court's grant of MAC East's partial motion for summary judgment, and the damages award in favor of MAC East.

## II. Issues on Appeal

We address in this opinion the following arguments raised by Shoney's on appeal: (1) that the district court erred in granting summary judgment to MAC East on the tortious interference claim, and in denying Shoney's motion for summary judgment on that claim; and (2) that the district court erred in reading a commercial reasonableness standard into Shoney's "sole discretion" to withhold consent to a proposed sublease or assignment.[5]

In addition to the above arguments, Shoney's argues that even if "sole discretion" includes a commercial reasonableness standard, whether its withholding of consent was commercially reasonable is a question of fact for a jury. Given our decision to certify a question to the Alabama Supreme Court, we find it premature to consider this argument. We also find it unnecessary to address Shoney's argument that the district court erred in awarding attorney's fees to MAC East because the Alabama Supreme Court's answer to the certified question may moot the issue of attorney's fees.

---

[5] Shoney's also argues that the damages awarded to MAC East for breach of the Assignment Agreement are too speculative to warrant recovery. Having reviewed the transcript of the damages hearing and the exhibits offered, we conclude that MAC East's damages are not too speculative to warrant recovery. Thus, the district court did not clearly err in awarding damages (if in fact Shoney's is deemed to have breached the Assignment Agreement).

We address the damages issue at this time because if we do not address it, the issue we certify to the Alabama Supreme Court would not necessarily be dispositive of the claim.

## III. Discussion

### A. The Tortious Interference Claim

In order to establish a claim of tortious interference with contractual or business relations under Alabama law, the plaintiff must prove (1) the existence of a contract or business relation, (2) the defendant's knowledge of the contract or business relation, (3) intentional interference with the contract or business relation, and (4) damage to the plaintiff as a result of the interference. *Universal Underwriters Ins. Co. v. Stokes Chevrolet, Inc.*, 990 F.2d 598, 603 n.8 (11th Cir. 1993). However, a tortious interference claim can be maintained only when the defendant is independent of or a stranger to the relation or contract with which he allegedly interfered. *Tom's Food, Inc. v. Carn*, 896 So. 2d 443, 454 (Ala. 2004). A defendant is not a stranger to a contract or business relationship when

> (1) the defendant is an essential entity to the purported injured relations; (2) the allegedly injured relations are inextricably a part of or dependent upon the defendant's contractual or business relations; (3) the defendant would benefit economically from the alleged injured relations; or (4) both the defendant and the plaintiff are parties to a comprehensive interwoven set of contract or relations.

*Waddell & Reed, Inc v. United Investors Life Ins. Co.*, 875 So. 2d 1143, 1156 (Ala. 2003) (quoting *Britt/Paulk Ins. Agency, Inc. v. Vandroff Ins. Ageny, Inc.*, 952 F. Supp. 1575, 1584 (N.D. Ga. 1996)) (internal quotation marks omitted).

The district court held that when Shoney's conditioned its approval of the sublease on the payment of additional sums of money, an action not authorized by the Assignment Agreement, it "effectively became a non-party or stranger to the business relation between MAC East and City Café." (R.1-40 at 14.) Applying de novo review, *Holloman v. Mail-Well Corp.*, 443 F.3d 832, 836 (11th Cir. 2006), we disagree.

First, Shoney's was an "essential entity to the purported injured relations," the first *Waddell* example, because its consent was a prerequisite to the proposed sublease. Second, Shoney's and MAC East are both parties to the Assignment Agreement, the terms of which affect MAC East's ability to sublease the premises. Therefore, they "are parties to a comprehensive interwoven set of contract or relations," the fourth *Waddell* example. Finally, and as a practical matter, Shoney's cannot be a stranger to the sublease when consummation of the sublease would leave it obligated on the covenants of the ground lease, effectively forming a business relationship between it and City Café. (R.1-16, Power Aff., at 1 ¶ 3.)

For these reasons, the district court erred in granting MAC East summary judgment as to liability on the tortious interference claim, and in denying Shoney's summary judgment on that claim.

9

## B. Breach of the Assignment Agreement Claim

In granting summary judgment to MAC East, the district court first held that Shoney's "sole discretion" to withhold consent was subject to a commercial reasonableness standard. It then held that Shoney's refusal to consent was not commercially reasonable as a matter of law.

Our analysis is guided by *Homa-Goff Interiors, Inc. v. Cowden*, 350 So. 2d 1035 (Ala. 1977), a splintered opinion of the Alabama Supreme Court involving a sublease approval clause. The lease in that case provided that "[t]he Lessee shall not assign or sublease all or any part of the . . . premises except by and with approval of the Lessor in writing." *Id.* at 1037. Two justices of the Alabama Supreme Court held that "even where the lease provides an approval clause, a landlord may not unreasonably and capriciously withhold his consent to a sublease agreement. The landlord's rejection should be judged under a test applying a reasonable commercial standard." *Id.* at 1308 (the "Jones opinion"). Four justices concurred with this part of the Jones opinion in a special concurrence authored by Justice Beatty. *Id.* at 1039 (the "Beatty opinion").

The four justices for whom Justice Beatty wrote, however, also believed that the parties could expressly agree "that the lessor's decision, for whatever reason, is binding." *Id.* at 1039 (Beatty, J., concurring specially). The opinion reasoned that "if

10

a reasonable and prudent businessperson would not object to the sublessee, the lessor will not be allowed to arbitrarily disapprove of him unless the parties have expressly bargained to give the lessor that power without regard to commercial standards." *Id.* at 1040 (Beatty, J., special concurrence extended). So, the justices for whom Justice Beatty wrote believed that a commercial reasonableness standard applied to lease approval clauses where the parties had not "bargained to give the lessor [the power to arbitrarily disapprove] without regard to commercial standards." *Id.*

Finally, three justices dissented in two different opinions. The dissenting justices maintained that Alabama courts had never read a commercial reasonableness standard into sublease approval clauses. Building on that theme, the dissenting justices also wrote that parties could contract to any standard they wished to govern a landlord's refusal to grant consent to a proposed sublease or assignment. *Id.* at 1039-40, 1041 (the "dissenting opinions").

We conclude that seven justices in *Homa-Goff*—the justices of the Beatty and dissenting opinions—agreed that parties are free to contract to whatever standard they please to govern a landlord's withholding of consent to a proposed sublease or assignment. In the present case, unlike in *Homa-Goff*, the parties appear to have contracted for a standard by which approval to sublease should be judged—the "sole discretion" standard. So the question becomes, what does "sole discretion" mean?

11

Shoney's argues that "sole discretion" means that it has the unqualified right to withhold consent to a sublease. MAC East argues that even under a "sole discretion" standard, Shoney's may not arbitrarily and capriciously refuse consent.

We find no clear, controlling precedent in Alabama law, and, on this appeal, deciding what "sole discretion" means is determinative as to the breach of contract claim. Because we find no controlling precedent and because this issue implicates Alabama's public policy interests in the alienability of commercial property, we certify the following question to the Alabama Supreme Court under Alabama Rule of Appellate Procedure 18:

> Under Alabama law, when an assignment contract gives the assignor "sole discretion" to withhold consent to the assignee's proposed sublease, is the assignor's exercise of that discretion subject to a commercial reasonableness standard, or any other standard?

Our phrasing of the question is not intended to restrict the scope or inquiry by the Alabama Supreme Court. "[I]f we have overlooked or mischaracterized any state law issues or inartfully stated . . . the question[] we have posed, we hope the Alabama Supreme Court will feel free to make the necessary corrections." *Tillman v. R.J. Reynolds Tobacco*, 253 F.3d 1302, 1308 (11th Cir. 2001) (quoting *Spain v. Brown & Williamson*, 230 F.3d 1300, 1312 (11th Cir. 2000)).

12

## IV. Conclusion

The district court's order granting summary judgment to MAC East as to liability on its tortious interference claim is reversed, and the court is directed to enter summary judgment in favor of Shoney's on that claim. The question of whether a commercial reasonableness standard, or any other standard, tempers Shoney's "sole discretion" to withhold consent to a proposed sublease is certified to the Alabama Supreme Court. We find no error in the district court's award of damages, if an award of damages is ultimately warranted. We defer decision on attorney's fees pending the Alabama Supreme Court's response to our certified question.

**REVERSED IN PART. QUESTION CERTIFIED TO THE SUPREME COURT OF ALABAMA.**