PARKER, Justice.
 

 This case is before this Court on a certified question from the United States Court of Appeals for the Eleventh Circuit. MAC East, LLC (“MAC East”), sued Shoney’s LLC (“Shoney’s”)
 
 [1]
 
 in state court, alleging breach of contract.
 
 [2]
 
 Specifically, the complaint alleged that Shoney’s wrongfully withheld approval of MAC East’s assignment or sublease of a ground lease Sho-ney’s had assigned to MAC East.
 

 
 *1218
 
 Shoney’s removed the action to the United States District Court for the Middle District of Alabama. Both parties filed motions for a summary judgment. The federal district court granted MAC East’s motion and denied the motion filed by Shoney’s, applying a “commercial reasonableness” standard to a clause in the agreement between MAC East and Sho-ney’s assigning the ground lease to MAC East that allowed Shoney’s, in its sole discretion, to withhold permission to sublease the property. Shoney’s appealed the federal district court’s decision to the United States Court of Appeals for the Eleventh Circuit.
 

 The federal appellate court, finding no clear, controlling precedent in Alabama law, has, pursuant to Rule 18, Ala. R.App. P., certified the following question to this Court:
 

 “Under Alabama law, when an assignment contract gives the assignor ‘sole discretion’ to withhold consent to the assignee’s proposed sublease, is the assignor’s exercise of that discretion subject to a commercial reasonableness standard, or any other standard?”
 

 MAC East, LLC v. Shoney’s,
 
 535 F.3d 1293, 1299 (11th Cir.2008). As discussed below, we answer the question in the negative.
 

 Facts
 

 Shoney’s, on April 13, 1979, entered into a ground-lease agreement as a tenant for certain property located on the Eastern Bypass in Montgomery. On February 20, 2002, Shoney’s and MAC East entered into an “Assignment and Assumption of Lease Agreement” (“the assignment agreement”) under which Shoney’s assigned some of its rights and obligations under the ground-lease agreement to MAC East, which intended to develop a shopping center on the property.
 

 Paragraph 19 of the assignment agreement contained the following language:
 

 “Assignee [MAC East] shall not enter into any assignment or sublease of any portion of the Property or the improvements thereon without the prior written consent of Assignor [Shoney’s] (and Lessor, if required by the Lease), which Assignor [Shoney’s] may withhold in its sole discretion.”
 

 On April 18, 2005, MAC East prepared a proposal to sublease the property to City Café Diners (“City Café”).
 
 [3]
 
 On May 9, 2005, MAC East sent the proposal and supporting documentation to Shoney’s for its evaluation and approval.
 

 On July 17, 2005, Shoney’s advised MAC East that it would approve the sublease if MAC East would pay Shoney’s $70,000 and arrange to have Shoney’s released from its 1979 ground-lease agreement. It also advised MAC East, as an alternative, that Shoney’s would approve the sublease if MAC East would pay Shoney’s $90,000 and Shoney’s would remain hable under its 1979 lease. MAC East then filed the underlying action.
 

 Analysis
 

 The sole question before this Court is whether an assignor’s reservation in an assignment agreement of the power to withhold consent to an assignee’s proposed sublease in the assignor’s “sole discretion” is subject to any mitigating standard, such as a commercial-reasonableness standard, when the applicable provision in the agreement does not contain a limitation that
 
 *1219
 
 such consent will not be unreasonably withheld.
 

 This Court addressed this issue in
 
 Homa-Goff Interiors, Inc. v. Cowden,
 
 850 So.2d 1035 (Ala.1977), a case to which the United States Court of Appeals for the Eleventh Circuit looked for guidance. In
 
 Homa-Goff,
 
 the main opinion, authored by Justice Jones and concurred in by a second Justice, stated:
 

 “ “Where the lease merely contains a provision — without more — granting a person, normally a landlord, the power to withhold consent,
 
 regardless of whether explicitly qualified to reasonable exercises of that power ...
 
 the courts have held the person’s refusal to consent to a person acceptable by reasonable commercial standards to be an unreasonable exercise and thus violative of the lease.’
 
 [Arrington v. Walter E. Heller Int’l Corp.,
 
 30 Ill.App.3d 631, 640-41,] 333 N.E.2d [50,] 58 [ (1975) ]. (Emphasis added.) “Guided by this rationale, we hold
 

 that, even where the lease provides an approval clause, a landlord may not unreasonably and capriciously withhold his consent to a sublease agreement. The landlord’s rejection should be judged under a test applying a reasonable commercial standard.”
 

 350 So.2d at 1038. Three Justices concurred with Justice Beatty, who concurred specially, saying, in part:
 

 “I concur with the majority opinion of Justice Jones in which he maintains that the lessor may not arbitrarily reject a sublessee chosen by the lessee. In my opinion, clauses which restrict subleasing should be interpreted to call for the application of reasonable commercial standards
 
 unless the parties themselves expressly agree that the lessor’s decision, for whatever reason, is binding.
 
 This is so because it is probable that when contracting the parties expect each other to act reasonably.”
 

 350 So.2d at 1039 (emphasis added). Justice Bloodworth dissented with an opinion, which two other Justices joined. Justice Bloodworth wrote:
 

 “I respectfully dissent.
 

 “Since 1853, this Court has upheld lease provisions which provide that there shall be no subletting without the express consent of the lessor. See:
 
 Nave v. Berry,
 
 22 Ala. 382 (1853);
 
 Crommelin v. Thiess & Co.,
 
 31 Ala. 412 (1858);
 
 Maddox v. Wescott, et al.,
 
 156 Ala. [4]92, 47 So. 170 (1908);
 
 City Garage & Sales Co. v. Ballenger,
 
 214 Ala. 516, 108 So. 257 (1926);
 
 Faucett v. Provident Mut. Life Ins. Co. of Philadelphia,
 
 244 Ala. 308, 13 So.2d 182 (1943).
 

 “To overturn a century and a quarter of existing real estate law without giving contracting parties “fair notice’ is my principal complaint with the majority’s opinion. At the very least, I think the majority ought to make the rule they have adopted ‘prospective.’
 

 “There must be literally tens of thousands of existing leases with similar ‘consent’ provisions as to subletting as those in this case. Lawyers and judges should have a right to rely on existing well-settled property law interpretations by our courts. See my special concurrence in
 
 Nunn v. Keith,
 
 289 Ala. 518, 524, 268 So.2d 792 (1972).
 

 “As Mr. Justice Almon points out in his dissent, in quoting from Mr. Justice Bouldin’s opinion in
 
 Faucett,
 
 supra, parties have a right to contract as they see fit so long as their contracts are not violative of the law, and I would add, or against public policy. Here, the parties made their contract; they ought to be bound by it. I would add that I concur
 
 *1220
 
 in the other views expressed in Justice Almon’s dissent.”
 
 [4]
 

 350 So.2d at 1039.
 

 Looking to the special concurrence in
 
 Homa-Goff,
 
 the Eleventh Circuit Court of Appeals here interpreted Justice Beatty’s special concurrence to mean that “the justices for whom Justice Beatty wrote believed that a commercial reasonableness standard applied to lease approval clauses where the parties had not ‘bargained to give the lessor [the power to arbitrarily disapprove] without regard to commercial standards.’ ” 535 F.3d at 1298. The Court of Appeals then looked to the reasoning of the dissenting Justices, stating:
 

 “The dissenting justices maintained that Alabama courts had never read a commercial reasonableness standard into sublease approval clauses. Building on that theme, the dissenting justices also wrote that parties could contract to any standard they wished to govern a landlord’s refusal to grant consent to a proposed sublease or assignment, [350 So.2d] at 1039-40, 1041 (‘the dissenting opinions’).
 

 “We conclude that seven justices in
 
 Homar-Goff
 
 — the justices of the Beatty and dissenting opinions — agreed that parties are free to contract to whatever standard they please to govern a landlord’s withholding of consent to a proposed sublease or assignment. In the present case, unlike in
 
 Homa-Goff,
 
 the parties appear to have contracted for a standard by which approval to sublease should be judged — the ‘sole discretion’ standard. So the question becomes, what does ‘sole discretion’ mean?”
 

 535 F.3d at 1298-99. In fact, the question becomes, “What does ‘sole discretion’ mean under Alabama law?” Succinctly stated, under Alabama law “sole discretion” means an absolute reservation of a right. It is not mitigated by an implied covenant of good faith and fair dealing in contracts
 
 [5]
 
 because an unqualified reservation of a right in the sole discretion of one of the parties to a contract expresses the intent of the parties to be subject to terms that are inconsistent with any such implied covenant.
 

 In
 
 Chrysler Capital Corp. v. Lavender,
 
 934 F.2d 290, 293 (11th Cir.1991), the United States Court of Appeals for the Eleventh Circuit recognized a commercial-reasonableness standard when it affirmed the federal district court’s holding that Chrysler Capital’s refusal to agree to a sublease was unreasonable. The Court of Appeals wrote: “Under Alabama law, ‘a landlord may not unreasonably and capriciously withhold his consent to a sublease agreement. The landlord’s rejection should be judged under a test applying a reasonable commercial standard.’
 
 Homa-Goff Interiors v. Cowden,
 
 350 So.2d 1035, 1038 (Ala.1977). The issue of commercial reason
 
 *1221
 
 ableness is a jury question.” 934 F.2d at 293. We disagree with
 
 Chrysler Capital
 
 to the extent that it may be inferred from that opinion that a commercial-reasonableness standard will be applied to all rejections of assignees or sublessees whether or not the right to reject has been reserved to the landlord in his sole discretion.
 

 The Eleventh Circuit Court of Appeals concluded here that seven Justices in
 
 Homo-Gaff
 
 “agreed that parties are free to contract to whatever standard they please to govern a landlord’s withholding of consent to a proposed sublease or assignment.” 535 F.3d at 1298. We, in accord with seven Justices in
 
 Homa-Goff
 
 and in accord with the endorsement of the liberty of contract expressed in Ala. Const. 1901, § 22,
 
 [6]
 
 confirm that parties
 
 are
 
 free to negotiate a contract to whatever standard they please, particularly where there is an arm’s length negotiation of a commercial lease or assignment by commercial entities. In such a situation we find persuasive the holding of the Supreme Court of Georgia that “[tjhere can be no breach of an implied covenant of good faith where a party to a contract has done what the provisions of the contract expressly give him the right to do.”
 
 Automatic Sprinkler Corp. of America v. Anderson,
 
 243 Ga. 867, 868, 257 S.E.2d 283, 284 (1979). That court continued, stating that “ ‘an absolute right or privilege ... can be exercised without incurring liability regardless of the motive for so doing.’ ” 243 Ga. at 868-69, 257 S.E.2d at 284-85 (quoting
 
 Schaeffer v. King,
 
 223 Ga. 468, 470, 155 S.E.2d 815, 816 (1967)). Furthermore, this Court has consistently held that the freedom to contract is an inviolate liberty interest.
 

 “In
 
 Ex parte Rhodes (Rhodes v. McWilson),
 
 [202 Ala. 68, 79 So. 462 (1918) ], it was observed: ‘When the people of this state, through their representatives, met in convention to form this state government, they reserved to themselves and their descendants and successors certain rights, liberties, privileges, and immunities, which they did not surrender or cede to the government to be created by the convention. They also exacted guaranties of the government so formed to protect
 
 each person
 
 in the state, and secure to him the enjoyment and exercise of these rights, liberties, privileges, and immunities, so reserved against encroachment or destruction thereof by other persons,
 
 whether majorities or minorities
 
 of the whole, or officers of any department of the government itself. Some, but not all, of these rights, liberties, privileges, and immunities, are enumerated in the Bill of Rights, which comprises the first 36 sections of our Constitution. That all this is true is obvious from a reading of the last two sections of the Bill of Rights, as follows:
 

 “ ‘ “Sec. 35. That the sole object and only legitimate end of government is to protect the citizen in the enjoyment of life, liberty, and property, and when the government assumes other functions it is usurpation and oppression.
 

 “ ‘ “Sec. 36. That this enumeration of certain rights shall not impair or deny others retained by the people; and, to guard against any encroachments on the rights herein retained, we declare that everything in this declaration of rights is excepted out of the general powers of government, and shall forever remain inviolate.”’ 202 Ala. 68, 69, 79 So. 462, 463, 1 A.L.R. 568.
 

 
 *1222
 
 [[Image here]]
 

 “In
 
 Meyer v. State of Nebraska,
 
 [262 U.S. 390 (1923) ], the Supreme Court of the United States, treating what is embraced in the term ‘liberty’ as guaranteed by the Constitution, observed: ‘While this court has not attempted to define with exactness the liberty thus guaranteed, the term has received much consideration and some of the included things have been definitely stated. Without doubt, it denotes not merely freedom from bodily restraint but also the
 
 right of the individual to contract
 

 [[Image here]]
 

 City of Mobile v. Rouse,
 
 233 Ala. 622, 624, 173 So. 266, 267-68 (1937)(final emphasis added).
 

 As stated in § 36, Ala. Const. 1901, quoted above, the rights enumerated in Alabama’s Bill of Rights are not the only rights retained by the people, but “everything in this declaration of rights is excepted from the general powers of government and shall forever remain inviolate.” Ala. Const.1901, § 36. The ban on impairing the obligations of contracts provided in Ala. Const.1901, § 22, is obviously one that shall forever remain inviolate. Alabama caselaw has maintained the constitutional prohibition on impairing contracts by consistently upholding the intent of the contracting parties.
 

 “Under general Alabama rules of contract interpretation, the intent of the contracting parties is discerned from the whole of the contract. See
 
 Loerch v. National Bank of Commerce of Birmingham,
 
 624 So.2d 552, 553 (Ala.1993). Where there is no indication that the terms of the contract are used in a special or technical sense, they will be given their ordinary, plain, and natural meaning. See
 
 Ex parte Dan Tucker Auto Sales, Inc.,
 
 718 So.2d 33, 36 (Ala.1998). If the court determines that the terms are unambiguous (susceptible of only one reasonable meaning), then the court will presume that the parties intended what they stated and will enforce the contract as written. See
 
 id.
 
 at 36;
 
 Voyager Life Ins. Co. v. Whitson,
 
 703 So.2d 944, 948 (Ala.1997).”
 

 Homes of Legend, Inc. v. McCollough,
 
 776 So.2d 741, 746 (Ala.2000).
 

 “Similarly, in
 
 Summers v. Adams Motor Co.,
 
 34 Ala.App. 319, 39 So.2d 300 (1949), the Court of Appeals upheld a liquidated-damages provision of a contract for the sale of an automobile. Summers, the purchaser, had agreed not to resell the car within six months without first offering to resell it to Adams Motor Company for its reasonable market value. The court stated:
 

 “ ‘Before the contract was executed the Motor Company was not obligated to sell or deliver the automobile that was sold to Mrs. Summers except on terms agreeable to the dealer. Neither was Mrs. Summers obligated to purchase that automobile from the Motor Company except on terms agreeable to her. It would be an unwarranted interference with their liberty of contract for this court to say that they could not enter into the agreement that was entered into .... ’
 

 “34 Ala.App. at 323, 39 So.2d at 303.”
 

 State v. Lupo,
 
 984 So.2d 395, 410 (Ala.2007)(Parker, J., concurring specially).
 

 The case quoted in the special writing in
 
 Lupo, Summers v. Adams Motor Co.,
 
 34 Ala.App. 319, 39 So.2d 300 (1949), involved a liquidated-damages provision in a contract for the sale of an automobile. In the years immediately following World War II, there was a shortage of new automobiles available to fill the increased demand created by returning servicemen. To ensure that those most in need of a car were afforded priority delivery and that the cars
 
 *1223
 
 would not be immediately resold for a fast profit, the dealership in
 
 Summers
 
 asked each buyer who expressed a real need for transportation to agree in writing that, in return for priority in delivery, the purchaser would not resell the car for at least six months, or if it was necessary to sell the car, it would first be offered the to the dealership at fair market value. The voluntary contract provided for liquidated damages of $250 if the purchaser breached. Summers breached the agreement, and the Court of Appeals affirmed a judgment in favor to the dealership. There the parties had entered into an unambiguous contract that required consideration from the purchaser in two parts: one part was the money paid, the other the commitment to provide the dealer the right of first refusal if the car was to be resold. The Court of Appeals stated: “We are dealing with an Alabama contract entered into by two competent contracting parties in this State, and we are mindful of our duty to avoid, if at all possible, infringing upon the rights of either or both.” 34 Ala.App. at 324, 39 So.2d at 304.
 

 Therefore, we maintain our long-held position that a contract, under Alabama law, should be construed as written. Where the parties to a contract use language that is inconsistent with a commercial-reasonableness standard, the terms of such contract will not be altered by an implied covenant of good faith. Therefore, an unqualified express standard such as “sole discretion” is also to be construed as written.
 
 “
 
 ‘[Wjhere the language is unambiguous, and but one reasonable construction of the contract is possible, it must be expounded as made, as
 
 the courts are not at liberty to make new contracts for the parties.’” Heinrich v. Globe Indem. Co.,
 
 276 Ala. 518, 523, 164 So.2d 709, 713-14 (1964) (quoting
 
 New York Life Ins. Co. v. Torrance,
 
 224 Ala. 614, 617, 141 So. 547, 550 (1932) (emphasis added)).
 

 Conclusion .
 

 A contract provision allowing an assignor to withhold consent to an assign-ee’s proposed further sublease, at the assignor’s sole discretion, is not subject to a commercial-reasonableness standard. The question certified to this Court by the Eleventh Circuit Court of Appeals is thus answered in the negative.
 

 QUESTION ANSWERED.
 

 COBB, C.J., and LYONS, WOODALL, STUART, SMITH, BOLIN, and SHAW, JJ., concur.
 

 MURDOCK, J., concurs in the result.
 

 [1]
 

 . We note that Shoney’s LLC recently changed its name to Sholand LLC. The brief filed with this Court was filed in the name “Shoney's LLC.”
 

 [2]
 

 . The action also included a claim of tortious interference with a contractual relationship, a claim that is not relevant to the question certified by the Eleventh Circuit Court of Appeals.
 

 [4]
 

 . In his dissent, Justice Almon expressed his opinion that there are many reasons a landlord may prevent subletting without express consent and that the majority opinion enlarges the estate conveyed by the leasing of the property for years by removing the restriction placed on the lessee.
 

 [5]
 

 . " ‘ ‘"There is an implied covenant that neither party shall do anything which will have the effect of destroying or injuring the rights of the other party to receive the fruits of the contract; ... in every contract there exists an implied covenant of good faith and fair dealing.’ " ' (quoting
 
 Sellers v. Head,
 
 261 Ala. 212, 73 So.2d 747, 751 (1954))[j.
 
 See also Restatement (Second) of Contracts
 
 § 205 (1981) ('Every contract imposes upon each party a duty of good faith and fair dealing in its performance and its enforcement.').”
 
 Hunter v. Wilshire Credit Corp.,
 
 927 So.2d 810, 813 n. 5 (Ala.2005) (quoting
 
 Lloyd Noland Found., Inc. v. City of Fairfield Healthcare Auth.,
 
 837 So.2d 253, 267 (Ala.2002)).
 

 [6]
 

 . Section 22 provides: "That no ex post facto law, nor any law, impairing the obligations of contracts ... shall be passed by the legislature ...."