WOODALL, Justice.
The City of Gadsden (“Gadsden”) appeals from an order of injunctive relief in favor of John Boman, a retired Gadsden police officer. We reverse the judgment and remand this cause with directions.

I. Factual and Procedural Background

According to the undisputed facts underlying this appeal, John Boman worked as a Gadsden police officer from 1965 until he retired in 1991. At the time of his retirement, police officers were operating under provisions of the “City of Gadsden Employee Handbook: Police Department (ed. 1989-1992)” (“the handbook”). In § 26, entitled “employee benefit plan,” the handbook listed “Major Medical benefits — 80% UCR [usual, customary, and reasonable charges] for the first $10,000 with 100% of covered expenses ... each year after $2,000 annual out-of-pocket per person.” The employee-benefit plan was issued and administered by Blue Cross and Blue Shield of Alabama (“Blue Cross”).
In 2000, Gadsden elected to join the “Local Government Health Insurance Plan” (“the plan”), a “self-insurance health benefit plan administered by the State Employees’ Insurance Board” (“the Board”). The claims administrator for the plan was Blue Cross. The plan stated, in pertinent part:
“Retired Employees
“Health benefits will be modified when you or your dependent becomes entitled to Medicare. Coverage under this plan will be reduced by those benefits payable under Medicare, Parts A and B.... “The [plan] remains primary for retirees until the retiree is entitled to Medicare. Upon Medicare entitlement, the member’s coverage under the [plan] will complement his/her Medicare Parts A and B coverages. Medicare will be the primary payer and the [plan] will be the secondary payer. A Medicare retiree and/or Medicare dependent should have both Medicare Parts A and B to have adequate coverage with the [plan].”
*884 (Some emphasis added; some emphasis omitted.)
When Boman turned 65 in 2011, he was receiving medical care for “congestive heart failure” and “severe osteoarthritis of the spine.” After his 65th birthday, Blue Cross began denying his claims for medical treatment based on the failure to provide Blue Cross with a “record of the Medicare payment.” However, Boman had no Medicare credits. Relying on Internal Revenue Service Publication 963 (rev. Nov. 2011), Federal-State Reference Guide: Providing guidelines for social security and Medicare coverage and tax withholding requirements for state, local and Indian tribal government employees and public employers, Gadsden explains Boman’s lack of Medicare credits as follows:
“Boman and similarly situated officers were considered ‘employees under [42 U.S.C. § 418 (codifying Section 218 of the Social Security Act) (hereinafter referred to as “§ 218”)]’ (may or may not be in a public retirement system, and may be extended ‘voluntary’ [Medicare] coverage). Coverage, however, can only extend to groups of employees, and there are two types of coverage groups. [Boman] was in a ‘retirement system coverage group,’ consisting of employees working in positions covered by a public retirement system. Such a group can be provided ... Medicare coverage only after a referendum is held as set forth in the statute. In Alabama, this would be a majority vote referendum: a majority of those eligible to vote (not just those voting) must favor obtaining coverage.
[[Image here]]
“12. ... Before April 1, 1986, the only way for state and local governmental employees — regardless of membership in a retirement system — to get on Medicare was through the voluntary § 218 agreement amendments as discussed above. Following the COBRA Act of 1985, however, virtually all state and local employees hired after March 31, 1986, were required to be covered by Medicare and to pay Medicare taxes regardless of their membership in a retirement system. Those hired before March 31, 1986, remained exempt — they were not covered by Medicare and Medicare taxes were not deducted from their wages.”
Affidavit of Roger Kirby, city attorney for Gadsden (footnote omitted) (some emphasis added).[1] Boman was hired before March 31,1986, and, although Gadsden did begin participation in the Medicare program in 2006, Boman’s employee group had not opted to obtain Medicare coverage before Boman retired. Consequently, Bo-man never paid Medicare taxes and does not claim to have Medicare coverage.
When the dispute over coverage arose, Boman sought review by the Board. In response, he received a letter dated March 30, 2011, from James J. Bradford, general counsel for the Board, which stated, in pertinent part:
“The [plan] becomes secondary when a retiree becomes entitled to Medicare. In order to have no gaps in coverage a retiree must have both Parts A and B. This requirement is published in the benefits handbook that every employee and retiree receives each year. All employees and retirees are, therefore, on notice of this requirement.
“Although I can appreciate Mr. Boman’s situation, the [Board] must strictly en *885 force the plan provisions. If the [Board] granted an exception to the [plan’s] Medicare secondary provisions for retirees of units, who for their own financial purposes decided not to participate in Medicare, it would result in all units who do participate in Medicare subsidizing the cost of the retirees of those units who do not participate. As fiduciaries of the [plan] the [Board] cannot allow such a practice. Accordingly, your request for the [plan] to remain Mr. Boman’s primary coverage cannot be granted. “Appeals are limited to exclusions or exceptions to coverage based on extenuating or extraordinary circumstances or policy issues not recently addressed or previously contemplated by the [Board]. The Medicare secondary provisions of the [plan] have been in place since the inception of the plan in 199B and have been enforced without exception since that time, regardless of whether the employer unit participates in Medicare. The fact that the City of Gadsden did not begin its participation in Medicare until 2006 does not meet the criteria necessary to allow an appeal of the application of the [plan’s] Medicare secondary provisions. Mr. Boman’s request for an appeal is, therefore, denied.”
Meanwhile, as early as November 3, 2009, Boman and 18 other active and retired Gadsden police officers sued Gadsden, alleging, among other things, that they had “been deprived of Social Security and Medicare protection which other police officers have been provided” and that, after 20 years of service, they were being required to pay a higher pension charge or percentage of base pay than their counterparts who were hired after April 1, 1986. On May 2, 2011, Boman filed a “motion for immediate relief for medical care.” He alleged that, when he was hired, Gadsden “provided police and firemen a 20 year retirement program whereby police and firemen would receive 50% retirement benefits after 20 years of service and lifetime medical care.” He averred that Gadsden had “breached its contract with [him] to provide continuing medical insurance,” and he requested “immediate relief by ordering [Gadsden] to pay for [his] medical care or in the alternative ordering [Gadsden] to pay for Medicare coverage for ... Boman so he will have continuing medical insurance as agreed by [Gadsden].”[2] On July 8, 2011, Gadsden filed a “motion for join-der of indispensable parties,” pursuant to Rule 19, Ala. R. Civ. P. The motion alleged, in pertinent part:
“7. Upon information and belief, [Bo-man’s] situation was brought on by his turning age 65, which resulted in the application of [Board] and/or [plan] policy provisions concerning primary and secondary coverage vis-a-vis those covered or not covered by Medicare.
“8. The application of these provisions to [Boman], and the resulting situation about which [he] complains, requires that the [Board] and the [plan] be made parties defendant to this action.
“9. The [Board] and [plan] should be joined because
“a. the complete relief sought by [Boman] cannot possibly be accorded as [Gadsden] cannot make someone be covered by a plan, be eligible for a plan, or determine whether coverages shall be primary or secondary;
“b. they have an interest related to the subject matter of this action;
*886 “c. their absence might impair their interest; [and]
“d. their absence subjects [Gadsden] to a substantial risk of incurring unwarranted and inconsistent obligations.”
Thus, on August 1, 2011, Boman and the other officers filed a 12th amended complaint. It named as additional defendants the Board and the plan. It also added distinct claims by Boman “for benefits” and alleged the torts of bad faith and outrage against Gadsden. Central to this appeal is the allegation in the complaint that
“the Defendants have interpreted the State’s medical plan as secondary to Medicare even though the City of Gadsden never gave Plaintiff Boman the opportunity to participate in Medicare. Therefore, Plaintiff Boman is not Medicare eligible. Plaintiff Boman is not eligible for medical care because the State medical plan is secondary to Medicare and Boman does not have Medicare.”
(Emphasis added.) Boman alleged that his “rights to medical care [had] vested and [could not] be modified or reduced.” He sought “injunctive emergency relief requiring [Gadsden] and Defendants to provide continuing medical care and a judgment for any unpaid medical bills which [were] due and owing.”
On September 1, 2011, the Board filed a motion to dismiss the action as to it and the plan. As to it, the Board alleged that it was an agency of the State and, therefore, was entitled to absolute immunity from suit. Also, according to the Board, the plan is not a legal entity subject to suit, but “merely a program administered by the Board to provide insurance.”[3] It also averred that, “[e]ven if [the plan] were an entity subject to suit, it would be immune for the same reasons [the] Board is immune.” Boman’s response to the Board’s motion failed to acknowledge or mention the immunity question.
On December 15, 2011, the trial court, without conducting an evidentiary hearing, entered an “order granting motion for emergency relief,” which provided, in pertinent part:
“The court grants Plaintiff Boman’s motion for immediate relief of medical care. The City of Gadsden shall be responsible for major medical expenses under the Plan provided by Gadsden without the newly added provision that benefits are secondary to Medicare. The court finds that John Boman was not provided Medicare coverage with [Gadsden],
“The City of Gadsden, at its option, may pay John Boman’s Medicare premium which is estimated to be $500/month so that Medicare will become the primary medical provider with the benefits provided by [Gadsden] through the State system as the secondary medical provider.
[[Image here]]
“The court holds that John Boman has an enforceable agreement with [Gadsden] for continued medical benefits which cannot be unilaterally modified by [Gadsden] because John Boman’s benefits vested after 20 years and/or when he retired.”
On December 28, 2011, the trial court dismissed the claims against the Board and the plan. That same day, Gadsden appealed.

*887
II. Discussion

Rule 19(a), Ala. R. Civ. P., defines who is a necessary party to an action:
“(a) Persons to Be Joined if Feasible. A person who is subject to jurisdiction of the court shall be joined as a party in the action if (1) in the person’s absence complete relief cannot be accorded among those already parties, or (2) the person claims an interest relating to the subject of the action and is so situated that the disposition of the action in the person’s absence may (i) as a practical matter impair or impede the person’s ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of the claimed interest. If the person has not been so joined, the court shall order that the person be made a party. If the person should join as a plaintiff but refuses to do so, the person may be made a defendant, or, in a proper case, an involuntary plaintiff. If the joined party objects to venue and joinder of that party would render the venue of the action improper, that party shall be dismissed from the action.”
(Emphasis added.) The purposes of Rule 19 “include the promotion of judicial efficiency and the final determination of litigation by including all parties directly interested in the controversy.” Byrd Cos. v. Smith, 591 So.2d 844, 846 (Ala.1991).
Although no one has argued on appeal that a necessary party was not joined below, “this Court is entitled to raise the absence of a necessary party ex men motu.” Chicago Title Ins. Co. v. American Guarantee & Liab. Ins. Co., 892 So.2d 369, 371 (Ala.2004).
Rule 19(a) is mandatory, stating that “[a] person who is subject to jurisdiction of the court shall be joined as a party in the action if (1) in the person’s absence complete relief cannot be accorded among those already parties.” (Emphasis added.) That being said, it is necessary to point out that the purported joinder of the Board in this action does not constitute compliance with Rule 19. This is so because the Board is a State agency, see, e.g., Ala.Code 1975, § 36-29-19.6(a), and, as such, it is not subject to suit in any action based on state law.[4]
“Under Ala. Const, of 1901, § 14, the State of Alabama has absolute immunity from lawsuits. This absolute immunity extends to ... agencies of the state.... ” Ex parte Tuscaloosa Cnty., 796 So.2d 1100, 1103 (Ala.2000) (emphasis added). Indeed, the trial court never acquired jurisdiction over the Board, and that agency was never legally present in the case.
Nevertheless, there are so-called “exceptions” to immunity for “ ‘suits naming the proper State official in his or her representative capacity.’ ” Alabama Dep’t of Transp. v. Harbert Int’l, Inc., 990 So.2d 831, 840 (Ala.2008) (quoting Ex parte Alabama Dep’t of Transp., 978 So.2d 17, 22 (Ala.2007) (emphasis in Harbert)). One such “exception” to § 14 'immunity is a claim “ ‘brought to compel State officials to perform their legal duties.’ ” Drummond Co. v. Alabama Dep’t of Transp., 937 So.2d 56, 58 (Ala.2006) (quoting Ex parte Carter, 395 So.2d 65, 68 (Ala.1980)).
Gadsden’s position is that “Medicare decisions are not made by the City” and “that the medical coverage determination complained of by [Boman] was made *888 by someone other than [Gadsden].” Gadsden’s brief, at 16. Boman disagrees with the Board’s construction of the plan, taking the position that he never had “become[] entitled to Medicare” and, consequently, that the plan should not be construed to “be the secondary payer.”
Similarly, the Board conceded that it is charged with the “adoption and administration of the plan.” The plan states that the Board has “absolute ... authority to interpret [its] terms and conditions.” In its motion to dismiss the claims against it, the Board argued, in pertinent part:
“The entitlement to benefits or lack of entitlement to benefits can only be determined by the language of the ... plan. [The] plan benefits are established by the [Board] and published each year in the summary plan description which every subscriber to [the plan] receives each year. As acknowledged by [Boman in his complaint], the plain language of the plan clearly states that, when a covered retiree becomes entitled to Medicare, Medicare becomes the retiree’s primary coverage and the [plan] becomes the retiree’s secondary coverage .... The only action alleged to have been taken by [the Board or the plan] is the application of the explicit plan language.”
(Emphasis added.) Because Boman’s claim directly challenges the Board’s administration of the plan — according to its terms — his claim is nothing more than one seeking to compel state officials to perform their legal duties. § 36-29-14(c). As such, it is not barred by § 14 immunity.
Moreover, Boman’s theory of relief against Gadsden for the alleged lack of medical coverage is that Gadsden gave him no opportunity to acquire Medicare credits, which matters only if the Board’s construction of the plan is correct. In other words, if the Board’s construction is incorrect, then Boman’s underlying claim against Gadsden is moot. The threshold issue, therefore, is the correctness of the Board’s construction of the plan.
Because the Board’s construction of the plan is at the heart of this dispute, that construction must be adjudicated in this action, and its officials must be bound by any such adjudication. See Austin v. Alabama Check Cashers Ass’n, 986 So.2d 1014, 1040 (Ala.2005) (“ ‘It is a principle of general application in Anglo-American jurisprudence that one is not bound by a judgment in personam in a litigation in which he is not designated as a party or to which he has not been made a party by service of process.’ ” (quoting Hansberry v. Lee, 311 U.S. 32, 40, 61 S.Ct. 115, 85 L.Ed. 22 (1940))).
Although the joinder of the Board itself as a necessary party was improper and ineffective, there currently appears no jurisdictional impediment to adding claims against those officials of the Board who are charged with administering the plan in them official and representative capacities to obtain review of the correctness of their construction of the plan. Indeed, under the facts of this case, the inclusion of those officials is, at a minimum, necessary for the rendition of “complete relief ... among those already parties,” Rule 19(a), and is needed for the just and efficient adjudication of this dispute. Thus, the proper course of action is for Boman to assert a claim against the officials of the Board in their official capacities, seeking to resolve the correctness of their construction of the relevant plan provisions.

III. Conclusion

In summary, the judgment is reversed based on the failure to join the officials of the Board, in their official capacities, as necessary parties, and the cause is remanded. On remand, the trial court is directed to entertain an amendment to the *889 complaint adding claims against those officials of the Board who are charged with administering the plan, in their official capacities.
REVERSED AND REMANDED WITH DIRECTIONS.
MALONE, C.J., and BOLIN, MURDOCK, and MAIN, JJ„ concur.

. For purposes of this appeal only, we assume that Kirby's construction and analysis of § 218 is accurate.

. Although the basis of Boman's breach-of-contract claim is not entirely clear, it appears to rest on the theory that the handbook created an enforceable contract or promise on the part of Gadsden.

. For purposes of this appeal, we regard the Board's characterization of the plan as correct.

. The plan is authorized by § 36-29-14, which also charges the Board with the responsibility to designate the health insurance “coverage and benefits” to which "[e]mploy-ees, officers, members, and retirees" are entitled. § 3 6-29-14(c).