BRYAN, Justice.
The City of Gadsden (“Gadsden”) and certain members of the State Employees’ Insurance Board (“the Board”) appeal two orders of the Etowah Circuit Court, in which the court granted injunctive relief to John Boman. We reverse the orders and remand the cause for further proceedings.
In City of Gadsden v. Boman, 104 So.3d 882 (2012) (hereinafter referred to as “Boman I ”), this Court set forth many of the relevant facts related to the action underlying these consolidated appeals:
“John Boman worked as a [Gadsden] police officer from 1965 until he retired in 1991. At the time of his retirement, police officers were operating under provisions of the ‘City of Gadsden Employee Handbook: Police Department (ed. 1989-1992)’ (‘the handbook’). In § 26, entitled ‘employee benefit plan,’ the handbook listed ‘Major Medical benefits — 80% UCR [usual, customary, and reasonable charges] for the first $10,000 with 100% of covered expenses ... each year after $2,000 annual out-of-pocket per person.’ The employee-benefit plan was issued and administered by Blue Cross and Blue Shield of Alabama (‘Blue Cross’).
“In 2000, Gadsden elected to join the ‘Local Government Health Insurance Plan’ (‘the [State] plan’), a ‘self-insurance health benefit plan administered by the State Employees’ Insurance Board’ (‘the Board’). The claims administrator for the [State] plan was Blue Cross. The [State] plan stated, in pertinent part:
“ ‘Retired Employees
“ ‘Health benefits will be modified when you or your dependent becomes *698 entitled to Medicare. Coverage under this plan will be reduced by those benefits payable under Medicare, Parts A and B....
“ ‘The [State plan] remains primary for retirees until the retiree is entitled to Medicare. Upon Medicare entitlement, the member’s coverage under the [State plan] will complement his/ her Medicare Parts A and B coverages. Medicare will be the primary payer and the [State plan] will be the secondary payer. A Medicare retiree and/or Medicare dependent should have both Medicare Parts A and B to have adequate coverage with the [State plan].’
“(Some emphasis added; some emphasis omitted.)
“When Boman turned 65 in 2011, he was receiving medical care for ‘congestive heart failure’ and ‘severe osteoarthritis of the spine.’ After his 65th birthday, Blue Cross began denying his claims for medical treatment based on the failure to provide Blue Cross with a ‘record of the Medicare payment.’ However, Boman had no Medicare credits....
[[Image here]]
“... [Although Gadsden did begin participation in the Medicare program in 2006, Boman’s employee group had not opted to obtain Medicare coverage before Boman retired. Consequently, Bo-man never paid Medicare taxes and does not claim to have Medicare coverage.
“When the dispute over coverage arose, Boman sought review by the Board. In response, he received a letter dated March 30, 2011, from James J. Bradford, general counsel for the Board, which stated, in pertinent part:
“ ‘The [State plan] becomes secondary when a retiree becomes entitled to Medicare. In order to have no gaps in coverage a retiree must have both Parts A and B. This requirement is published in the benefits handbook that every employee and retiree receives each year. All employees and retirees are, therefore, on notice of this requirement.
“ ‘Although I can appreciate Mr. Bo-man’s situation, the [Board] must strictly enforce the [State] plan provisions. If the [Board] granted an exception to the [State plan’s] Medicare secondary provisions for retirees of units, who for their own financial purposes decided not to participate in Medicare, it would result in all units who do participate in Medicare subsidizing the cost of the retirees of those units who do not participate. As fiduciaries of the [State plan] the [Board] cannot allow such a practice. Accordingly, your request for the [State plan] to remain Mr. Boman’s primary coverage cannot be granted.
“ ‘Appeals are limited to exclusions or exceptions to coverage based on extenuating or extraordinary circumstances or policy issues not recently addressed or previously contemplated by the [Board]. The Medicare secondary provisions of the [State plan] have been in place since the inception of the [State] plan in 1993 and have been enforced without exception since that time, regardless of whether the employer unit participates in Medicare. The fact that the City of Gadsden did not begin its participation in Medicare until 2006 does not meet the criteria necessary to allow an appeal of the application of the [State plan’s] Medicare secondary provisions. Mr. Boman’s request for an appeal is, therefore, denied.’
“Meanwhile, as early as November 3, 2009, Boman and 18 other active and retired Gadsden police officers sued Gadsden, alleging, among other things, *699 that they had ‘been deprived of Social Security and Medicare protection which other police officers have been provided’ and that, after 20 years of service, they were being required to pay a higher pension charge or percentage of base pay than their counterparts who were hired after April 1, 1986. On May 2, 2011, Boman filed a ‘motion for immediate relief for medical care.’ He alleged that, when he was hired, Gadsden ‘provided police and firemen a 20 year retirement program whereby police and firemen would receive 50% retirement benefits after 20 years of service and lifetime medical care.’ He averred that Gadsden had ‘breached its contract with [him] to provide continuing medical insurance,’ and he requested ‘immediate relief by ordering [Gadsden] to pay for [his] medical care or in the alternative ordering [Gadsden] to pay for Medicare coverage for ... Boman so he will have continuing medical insurance as agreed by [Gadsden].[2] On July 8, 2011, Gadsden filed a ‘motion for joinder of indispensable parties,’ pursuant to Rule 19, Ala. R. Civ. P. The motion alleged, in pertinent part[, that the Board and the State plan should be joined to the action].
[[Image here]]
“... [0]n August 1, 2011, Boman and the other officers filed a 12th amended complaint. It named as additional defendants the Board and the [State] plan. It also added distinct claims by Boman ‘for benefits’ and alleged the torts of bad faith and outrage against Gadsden. Central to this appeal is the allegation in the complaint that
“ ‘the Defendants have interpreted the State’s medical plan as secondary to Medicare even though the City of Gadsden never gave Plaintiff Boman the opportunity to participate in Medicare. Therefore, Plaintiff Boman is not Medicare eligible. Plaintiff Bo-man is not eligible for medical care because the State medical plan is secondary to Medicare and Boman does not have Medicare.’
“(Emphasis added.) Boman alleged that his ‘rights to medical care [had] vested and [could not] be modified or reduced.’ He sought ‘injunctive emergency relief requiring [Gadsden] and Defendants to provide continuing medical care and a judgment for any unpaid medical bills which [were] due and owing.’
“On September 1, 2011, the Board filed a motion to dismiss the action as to it and the [State] plan. As to it, the Board alleged that it was an agency of the State and, therefore, was entitled to absolute immunity from suit. Also, according to the Board, the [State] plan is not a legal entity subject to suit, but ‘merely a program administered by the Board to provide insurance.’[3] It also averred that, ‘[e]ven if [the State plan] were an entity subject to suit, it would be immune for the same reasons [the] Board is immune.’ Boman’s response to the Board’s motion failed to acknowledge or mention the immunity question.
“On December 15, 2011, the trial court, without conducting an evidentiary hearing, entered an ‘order granting motion for emergency relief,’ which provided, in pertinent part:
“ ‘The court grants Plaintiff Bo-man’s motion for immediate relief of medical care. The City of Gadsden shall be responsible for major medical expenses under the [State] Plan provided by Gadsden -without the newly added provision that benefits are secondary to Medicare. The court finds that John Boman was not provided Medicare coverage with [Gadsden].
“ ‘The City of Gadsden, at its option, may pay John Boman’s Medicare premium which is estimated to be *700 $500/month so that Medicare will become the primary medical provider with the benefits provided by [Gadsden] through the State system as the secondary medical provider.
[[Image here]]
“ ‘The court holds that John Boman has an enforceable agreement with [Gadsden] for continued medical benefits which cannot be unilaterally modified by [Gadsden] because John Bo-man’s benefits vested after 20 years and/or when he retired.’
“On December 28, 2011, the trial court dismissed the claims against the Board and the [State] plan. That same day, Gadsden appealed.[1]
[[Image here]]
“ [2]Although the basis of Boman’s breach-of-contract claim is not entirely clear, it appears to rest on the theory that the handbook created an enforceable contract or promise on the part of Gadsden.
[3]For purposes of this appeal, we regard the Board’s characterization of the [State] plan as correct.”
Boman 1, 104 So.3d at 883-86.
This Court went on in Boman I to reverse the circuit court’s judgment, granting Boman injunctive relief against Gadsden and ordering the payment of Boman’s outstanding medical bills. The Court stated:
“Because the [State Employees’ Insurance] Board’s construction of the [State] plan is at the heart of this dispute, that construction must be adjudicated in this action, and its officials must be bound by any such adjudication.”
104 So.3d at 888. The Court went on to hold that, although the Board itself could not be added to the complaint, “the inclusion of [officials of the Board] is, at a minimum, necessary for the rendition of ‘complete relief ... among those already parties,’ Rule 19(a), [Ala. R. Civ. P.,] and is needed for the just and efficient adjudication of this dispute.” Id. We then reversed the circuit court’s judgment and remanded the cause with instructions to the circuit court “to entertain an amendment to the complaint adding claims against those officials of the Board who are charged with administering the plan in their official capacities.” Id., at 888-89.
On remand, Boman again amended the complaint, adding as defendants members of the Board Joe N. Dickson, Paige Heb-son, David Bronner, Marquita Davis, Jon Barganier, John Carroll, William Meel-lown, Faye Nelson, Robert Pickett, Joanne W. Randolph, and Robert Wagstaff (“the Board members”), and seeking
“injunctive relief requiring ... the State Board members to provide continuing medical care and a judgment for any unpaid medical bills which are due and owing. Plaintiff Boman requested] attorney fees.
“Boman also requested] a determination of the Court as to whether he is Medicare eligible as defined by the State Plan. Plaintiff Boman requested] an Order compelling the Board Members to find that Boman is not Medicare eligible and an Order compelling the State Board Members to provide primary health insurance to John Boman since he is not Medicare eligible.”
Gadsden moved the circuit court to vacate its December 15 and July 30 orders. See supra note 1. The circuit court did not rule on that motion.
*701 On October 28, 2012, the Board members moved the circuit court for a summary judgment, arguing, among other things, that because Boman is over 65 years old and a United States citizen, he is entitled to Medicare benefits. Therefore, the Board argued, “as a matter of law, any coverage for Boman under the [State plan] is secondary to Medicare.” The Board members did not take a position with regard to Gadsden’s obligation to provide Boman with medical benefits.
In November 2012, Boman moved for a “Summary Judgment on the issue of the State medical insurance being primary coverage for Boman since he is not Medicare eligible.” Boman argued that under the retirement plan in place when he retired, he was entitled to 50% retirement benefits and lifetime medical care funded by Gadsden. He also argued that he was not “Medicare eligible” and that, therefore, he was entitled to primary coverage under the self-insurance health-benefit plan administered by the Board (“the State plan”). In January 2018, Boman moved the circuit court to instruct the Board members or, in the alternative, Gadsden to pay his medical bills and to reinstate his prescription card.
On February 5, 2013, after a hearing on the summary-judgment motions, the circuit court entered a summary judgment in favor of Boman “on the issue of the State medical insurance being primary coverage for Boman since he is not Medicare eligible.” The circuit court found, among other things, that “[t]he insurance provided to John Boman by the [Board] provides that medical insurance provided by the State is secondary to Medicare” and that “Boman does not have Medicare.” The circuit court went on to conclude, among other things, that “John Boman is not Medicare eligible because he was never allowed to participate in the Medicare program while a Gadsden Police Officer,” that “[t]he medical insurance provided by the [Board] does not define ‘Medicare eligible,’ ” and that “[t]he [Board] is obligated to provide medical benefits to John Boman as primary insurance because John Boman is not ‘Medicare eligible.’ ”
The circuit court determined that “John Boman [was] entitled to summary judgment on the issue of the State medical insurance being primary coverage for Bo-man since he is not Medicare eligible” and awarded him relief based on that conclusion. Specifically, the circuit court stated:
“The Board Members ... are ordered to provide major medical insurance benefits to John Boman and his wife as primary insurance through the insurance coverage provided the [Board].
“The insurance provided to John Bo-man will include all medical expenses incurred after John Boman became 65 years old.
“The Board Members shall approve all costs of medical treatment reasonably incurred by John Boman and his wife.
“The Board Members shall report back to the Court on the payment of John Boman’s medical bills within 14 days of this Order.
“In the event that a higher Court overturns the Court’s decision that the [Board] is responsible for medical benefits for John Boman and his wife, the City shall be responsible for providing medical benefit coverage for John Bo-man and his wife.”
On February 7, 2013, the circuit court entered an “order granting emergency relief,” in which the circuit court ordered the Board members to “process all of John Boman’s outstanding bills for medical services forthwith in accordance with the State plan,” based on its finding that Bo-man was not eligible for Medicare. The circuit court also ordered the Board members to continue Boman’s insurance coverage during any appeal that might be filed *702 and to provide “prompt and full insurance coverage” for Boman under the State plan.
The February 7 order also granted Bo-man injunctive relief against Gadsden. The circuit court ordered Gadsden to pay Boman’s medical expenses and to provide coverage, including prescription coverage, to Boman in accordance with the retirement program Gadsden was using at the time Boman retired as a Gadsden police officer. The circuit court also found that Gadsden was responsible for making up the difference, if any, between Boman’s coverage under the State plan and coverage under the plan in place at the time Boman retired.[2]
Gadsden and the Board members separately appealed the circuit court’s orders. Those appeals have been consolidated for the purpose of issuing one opinion.
Although the February 5 summary judgment adjudicated the claims raised by Boman against the Board members, it did not address all the claims against Gadsden, and it was not certified as final pursuant to Rule 54(b), Ala. R. Civ. P. “ ‘A nonfinal judgment will not support an appeal.’ ” Schlarb v. Lee, 955 So.2d 418, 420 (Ala.2006) (quoting Dzwonkowski v. Sonitrol of Mobile, Inc., 892 So.2d 354, 368 (Ala.2004)). However, the February 5 and February 7 orders award injunctive relief against the Board members and Gadsden, and the Board and Gadsden appeal those orders pursuant to Rule 4(a), Ala. R.App. P., which provides, in pertinent part, for an appeal from “any interlocutory order granting, continuing, modifying, refusing, or dissolving an injunction.” In Dawkins v. Walker, 794 So.2d 333, 335 (Ala.2001), this Court addressed a similar situation, involving a summary judgment that included an award of injunctive relief. It stated:
“At the outset, we note that this Court must consider this appeal as an appeal from an order granting injunctive relief. Such an order is appealable. See Rule 4(a)(1)(A), Ala.R.App.P., relating to the appeal of ‘any interlocutory order granting, continuing, modifying, refusing, or dissolving an injunction, or refusing to dissolve or to modify an injunction.’ Any noninjunctive aspect of this interlocutory ‘summary judgment’ would not be appealable. See Ala.Code 1975, § 12-22-2.
“An injunction is defined as ‘[a] court order commanding or preventing an action.’ Black’s Law Dictionary 788 (7th ed. 1999). Because the order at issue in this case directs the [board of directors] to take action, by ordering that ‘Walker be restored to the [board of directors] ... forthwith,’ we conclude that the order, though styled as a ‘partial summary judgment,’ was injunctive in nature.”
The February 5 order in this case was entered in response to a motion for a summary judgment as to “the issue of the State medical insurance being primary coverage for Boman.” That order, like the order in Dawkins, directs the Board members to take action, by ordering them “to provide major medical insurance benefits to John Boman and his wife,” to include in that coverage “all medical expenses incurred after John Boman became 65 years old,” to “approve the costs of medical treatment reasonably incurred by John Boman and his wife,” and to report back to the circuit court when the payment was complete. The February 5 order also in *703 structed Gadsden to provide Boman’s medical-benefits coverage, in the event that the order regarding the Board members was overturned on appeal. Like the summary judgment in Dawkins, the February 5 order in this case was injunctive in nature and that order, although not a final judgment, and the February 7 order are ap-pealable pursuant to Rule 4(a).
The orders provide both permanent and preliminary injunctive relief. A permanent injunction is “[a]n injunction granted after a final hearing on the merits.” Black’s Law Dictionary 855 (9th ed. 2009), whereas a preliminary injunction is “[a] temporary injunction issued before or during trial to prevent an irreparable injury from occurring before the court has a chance to decide the case.” Id. The relief awarded in the February 5 order followed a hearing on Boman’s summary-judgment motion addressing the issue whether Bo-man was entitled to Medicare and, therefore, entitled to primary coverage under the State plan. Thus, the relief related to the Board members’ obligations under the State plan, i.e., directing the Board members to provide Boman and his wife major-medical insurance benefits, was in the nature of permanent injunctive relief.
“ ‘ “To be entitled to a permanent injunction, a plaintiff must demonstrate success on the merits, a substantial threat of irreparable injury if the injunction is not granted, that the threatened injury to the plaintiff outweighs the harm the injunction may cause the defendant, and that granting the injunction will not disserve the public interest.”
‘“TFT, Inc. v. Warning Sys., Inc., 751 So.2d 1238,1242 (Ala.1999), overruled on another point of law, Holiday Isle, LLC v. Adkins, 12 So.3d 1173 (Ala.2008). The entry of a permanent injunction is reviewed de novo....’”
Walden v. ES Capital, LLC, 89 So.3d 90, 105 (Ala.2011) (quoting Sycamore Mgmt. Grp., LLC v. Coosa Cable Co., 42 So.3d 90, 93 (Ala.2010)).
The Board members argue that “Boman cannot be successful on the merits in this case because he is not entitled to primary coverage under the terms of the [State] Plan.” Board members’ brief, at 27. The State plan provides, in pertinent part:

“Retired Employees

“Health benefits will be modified when you or your dependent becomes entitled to Medicare. Coverage under this plan will be reduced by those benefits payable under Medicare, Parts A and B.... “The [State plan] remains primary for retirees until the retiree is entitled to Medicare. Upon Medicare entitlement, the member’s coverage under the [State plan] will complement his/her Medicare Parts A and B coverages. Medicare will be the primary payer and the [State plan] will be the secondary payer. A Medicare retiree and/or Medicare dependent should have both Medicare Parts A and B to have adequate coverage with the [State plan].”
(Emphasis added.)
The Board members argue that “[t]he language of the applicable [State] Plan is unambiguous. Coverage under the Plan becomes secondary once an insured is ‘entitled to Medicare.’ ” Board members’ brief, at 17. Boman appears to agree that the State plan is unambiguous, arguing, however, that “[t]he [State] Plan clearly provides that benefits will be provided when the beneficiary becomes entitled to the benefit.” Boman’s brief, at 17. Bo-man goes on to argue that “[i]f the [State] Plan is ambiguous, the [State] Plan should be construed in favor of the insured against the insurer.” Id. The parties disagree, however, on the meaning of the *704 phrase “entitled to Medicare” as that phrase is used in the State plan.[3]
“‘Under general Alabama rules of contract interpretation, the intent of the contracting parties is discerned from the whole of the contract. Where there is no indication that the terms of the contract are used in a special or technical sense, they will be given their ordinary, plain, and natural meaning. If the court determines that the terms are unambiguous (susceptible of only one reasonable meaning), then the court will presume that the parties intended what they stated and will enforce the contract as written.’ ”
Shoney’s LLC v. MAC E., LLC, 27 So.3d 1216, 1222 (Ala.2009) (quoting Homes of Legend, Inc. v. McCollough, 776 So.2d 741, 746 (Ala.2000) (citations omitted)).
The State plan does not define the term “entitled” as that word is used in the State plan. However, there is no indication that the term is “used in a special or technical sense.” Shoney’s, 27 So.3d at 1222. Thus, “[it] will be given [its] ordinary, plain, and natural meaning.” Id. To “entitle” is “to furnish with proper grounds for seeking or claiming something.” Merriam-Webster’s Collegiate Dictionary 417 (11th ed. 2003). That definition is consistent with the definition in the federal Medicare regulations, which provides that “[e]ntitled means that an individual meets all the requirements for Medicare benefits.” 42 C.F.R. § 400.202.
The Board members argue:
“For purposes relevant to this case, there are two primary Medicare coverages — Part A (hospital insurance) and Part B (medical insurance). Individuals who have paid a sufficient amount of Medicare taxes while working are automatically enrolled in Part A and do not have to pay a monthly premium for Part A coverage. (C. 1081; 42 C.F.R. § 406.5, 406.6, 406.10.) This concept is generally referred to as premium-free Part A hospital insurance. Unlike Part A, there is no premium-free Part B. All participants in Part B must enroll and pay a premium....
“If an individual such as Boman, who has not participated in Social Security, is not entitled to premium-free Part A hospital insurance, he or she is still entitled to participate in Part A by simply enrolling and paying the applicable premium. (C. 1081-1084.) The only requirements for enrollment are that the individual be a U.S. citizen and resident who is 65 or older. 42 C.F.R. §§ 406.20 and 407.10....
[[Image here]]
“The requirements for Medicare Part A benefits are listed within 42 C.F.R. § 406.1, et seq. As specifically relevant to Boman, 42 C.F.R. § 406.20 lists the requirements for enrolling in Medicare Part A, premium hospital insurance.... [T]he regulation states that any individual may enroll for Medicare Part A if he or she: ‘(1) Has attained age 65; (2) Is a resident of the United States and is either — (i) a citizen of the United States; or (ii) an alien lawfully admitted for permanent residence ...; (3) Is not eligible for Part A benefits under [the premium-free provision]; and (4) Is entitled to supplementary medical insurance *705 [under Part B of Medicare].’ 42 C.F.R. § 406.20. The requirements for receipt of Part B benefits likewise only require that an individual be 65 or older, be a resident of the U.S. and be a citizen or lawfully admitted alien. 42 C.F.R. § 407.10.
“There is no dispute in this case that Boman is a United States resident and citizen, who is age 65 or older. Therefore, pursuant to 42 C.F.R. §§ 406.20 and 407.10, he meets the requirements to enroll in Part A and Part B of Medicare and is thus ‘entitled’ to Medicare benefits as defined by 42 C.F.R. § 400.202. Because Boman is entitled to Medicare benefits, his health insurance coverage under the Plan is secondary to the coverage available to him under Medicare.”
Board members’ brief, at 22-25.
The Board members’ representation of the cited Medicare provisions and the requirements that must be met to access coverage under Parts A and B appears to be correct, and Boman provides no argument to the contrary. Instead, he argues that he is not eligible for Medicare because “he was never allowed to participate in Medicare by [Gadsden].” Boman’s brief, at 17. However, a failure to “participate in Medicare” or to pay Medicare taxes during employment does not cut off all access to Medicare. The Medicare regulations state that “[h]ospital benefits are available to most individuals age 65 or over and to certain individuals under age 65 who do not qualify for those benefits under subpart B of this part[, which addresses premium-free hospital coverage for, among others, those that paid Medicare taxes through their employer,] and are willing to pay a monthly premium.” 42 C.F.R. § 406.20. Boman has not argued that he falls outside the scope of “most individuals” who can get access to Medicare coverage, pursuant to the requirements of 42 C.F.R. §§ 406.20 and 407.10. As the Board members note in their brief, “the concept of eligibility for premium-free Medicare coverage differs significantly from the concept of entitlement to participate in the Medicare program.” Board members’ brief, at 22.
The plain language of the State plan provides that coverage under that plan becomes secondary when a retiree becomes “entitled to Medicare,” not when a retiree becomes “entitled to premium-free Medicare.” To adopt the construction advocated by Boman and applied by the circuit court, this Court would have to read an additional condition into the State plan. To do so is contrary to settled principles of Alabama law regarding the construction of contracts (i.e., when terms in a contract are unambiguous, “ ‘the court will presume that the parties intended what they stated and will enforce the contract as written,’ ” Shoney’s, 27 So.Sd at 1222 (quoting Homes of Legend, Inc. v. McCollough, 776 So.2d at 746), and ‘“[i]f there is no ambiguity, courts ... cannot defeat express provisions in a policy ... by making a new contract for the parties.’ ” Shrader v. Employers Mut. Cas. Co., 907 So.2d 1026, 1034 (Ala.2005) (quoting St. Paul Mercury Ins. Co. v. Chilton-Shelby Mental Health Ctr., 595 So.2d 1375,1377 (Ala.1992))).
Thus, we conclude that the circuit court erred in determining that Boman is not “entitled” to Medicare as that term is used in the State plan. Therefore, Boman has not demonstrated success on the merits as to that issue, and he was not entitled to the injunctive relief awarded against the Board members on that basis. The February 5 order also awarded injunctive relief to “[Boman’s] wife.” However, his wife is not a party to the underlying action, and no claims have been made or relief requested on her behalf in any of the pleadings filed in this case. No argument was made in the summary-judgment mo *706 tion or at the hearing as to her entitlement to coverage under the State plan or as a result of any agreement with Gadsden. Thus, the circuit court erred in awarding her injunctive relief in the February 5 order.
The circuit court also awarded in-junctive relief against Gadsden in its February 5 order. The circuit court ordered:
“In the event that a higher Court overturns the [circuit] [cjourt’s decision that the [Board members] [are] responsible for medical benefits for John Bo-man and his wife, the City shall be responsible for providing medical benefit coverage for John Boman and his wife.”
This relief was awarded following the hearing on Boman’s motion for a summary judgment as to the issue of primary coverage under the State plan. However, there has been no final hearing on the merits as to Gadsden’s alleged obligations to Boman for medical benefits. Thus, a permanent injunction against Gadsden with regard to this issue would not be appropriate at this time, and, as will be demonstrated hereinafter, Boman has not met the requirements for preliminary injunctive relief against Gadsden, pursuant to Rule 65(c), Ala. R. Civ. P. Therefore, the circuit court erred in awarding alternative injunctive relief against Gadsden in the February 5 order.
The February 7 order also awarded preliminary injunctive relief against Gadsden.[4] It provided, among other things, that Gadsden was responsible for providing Boman with benefits “in accordance with the medical benefits plan provided by [Gadsden] in effect ... [on] the date of John Boman’s retirement.” The circuit court also ordered Gadsden to make up the difference, if any, in the medical coverage provided under the State plan and the medical coverage allegedly provided by the plan that was in place at the time Boman retired and to provide Boman with prescription coverage.
Rule 65(c), Ala. R. Civ. P., provides:
“‘No restraining order or preliminary injunction shall issue except upon the giving of security by the applicant, in such sum as the court deems proper, for the payment of such costs, damages, and reasonable attorney fees as may be incurred or suffered by any party who is found to have been wrongfully enjoined or restrained; provided, however, no such security shall be required of the State of Alabama or of an officer or agency thereof, and provided further, in the discretion of the court, no such security may be required in domestic relations cases.”
This Court noted in Spinks v. Automation Personnel Services, Inc., 49 So.3d 186, 190 (Ala.2010), that “ ‘ “there are ... necessary exceptions to such an absolute holding ... under Rule 65(c) [that security must be given before a preliminary injunction can issue], such as requiring only a nominal security, or where the litigant is impecunious or the issue is one of overriding public concern.” ’ ” (Quoting Anders v. Fowler, 423 So.2d 838, 840 (Ala.1982), quoting in turn Lightsey v. Kensington Mortg. & Fin. Corp., 294 Ala. 281, 285, 315 So.2d 431, 434 (1975).) However, this Court went on to state:
“Alabama law ... clearly provides that ‘[i]t is mandatory that security be given under Rule 65(c), “unless the trial court makes a specific finding based *707 upon competent evidence that one or more of the exceptions ... do exist.” ’ Anders, 423 So.2d at 840 (quoting Lightsey, 294 Ala. at 285, 315 So.2d at 434)
(emphasis added)....
“Here, the trial court issued a preliminary injunction without requiring [Automation Personnel Services, Inc.,] to give security as mandated by Rule 65(c), Ala. R. Civ. P. Furthermore, the trial court failed to make ‘a specific finding based upon competent evidence that one or more of the exceptions, stating them, do exist.’ Anders, 423 So.2d at 840. As noted, ‘there can be no injunction ... until the bond has been given.’ Anders, 423 So.2d at 840 (quoting Ex parte Miller, 129 Ala. [130] at 133, 30 So. [611] at 612 [ (1901) ], quoted with approval in Lightsey, 294 Ala. at 285, 315 So.2d at 434). Accordingly, ‘[u]nder the clear mandate of Rule 65(c), and the previous decisions of this court, we have no alternative but to reverse and remand.’ ”
Spinks, 49 So.3d at 191 (quoting Anders, 423 So.2d at 840).
Like the trial court in Spinks, the circuit court here issued preliminary injunctive relief against Gadsden without requiring Boman to give security and without making any specific finding that an exception to Rule 65(c) applied. Boman has made no argument to the contrary. Thus, as we did in Spinks, this Court has “no alternative but to reverse” the preliminary injunction issued against Gadsden and remand the cause.
For the foregoing reasons, we hold that the circuit court erred in awarding injunc-tive relief against the Board members and Gadsden. The circuit court’s orders are reversed in that regard, and the cause is remanded for further proceedings consistent with this opinion.
1120579 — REVERSED AND REMANDED.
STUART, BOLIN, PARKER, SHAW, MAIN, and WISE, JJ., concur.
MURDOCK, J., dissents.
MOORE, C.J., recuses himself.
1120633 — REVERSED AND REMANDED.
STUART, BOLIN, PARKER, MURDOCK, SHAW, MAIN, and WISE, JJ., concur.
MOORE, C.J., recuses himself.

. On July 30, 2012, while the appeal was pending in Boman I the circuit court entered an order, holding Gadsden in contempt for failing to comply with the December 15 order, which the circuit court found had not been stayed, and instructing Gadsden to provide Boman with medical coverage as set forth in the December 15 order.

. Gadsden’s responsibility to provide Boman with medical coverage, pursuant to the plan in place when Boman retired, has not been adjudicated on the merits. No hearing was held on Boman’s motion for emergency relief, and the summary judgment does not address the existence of an alleged contract between Boman and Gadsden or Gadsden’s alleged responsibility to provide ongoing medical coverage to Boman.

. Boman and the circuit court frame the issue as whether Boman is "Medicare eligible" rather than "entitled to Medicare.” The relevant provisions of the State plan do not use the term "eligible” in reference to Medicare, and the Board members argue that the terms “entitled” and "eligible” are not synonymous. Addressing the alleged distinction between those two terms is not necessary to our resolution of the question of Boman's coverage under the State plan. However, for purposes of clarity, we will track the language of the State plan and address the issue in terms of whether Boman is “entitled to Medicare.”

. The February 7 order also included injunc-tive relief against the Board members based on the circuit court’s finding that Boman was entitled to primary coverage under the State plan. Because we have determined that Bo-man is not entitled to such coverage, that part of the February 7 order awarding injunctive relief against the Board members is due to be reversed as well.