PITTMAN, Judge.
This appeal arises from postjudgment proceedings in an action originally brought by Alex Thomas (“the employee”) against the City of Birmingham (“the City”) in October 2012 in which the employee sought an award of benefits under the Alabama Workers’ Compensation Act, Ala. Code 1975, § 25-5-1 et seq.[1] The parties reached a mediated settlement of the employee’s claims in October 2013, and a joint petition was filed by the parties on December 12, 2013, in which they noted their agreement upon a settlement pursuant to which the employee would release all claims against the City and its insurers, officers, agents, and employees, except those for future medical benefits and, in consideration therefor, the City would pay a total amount of $225,000, of which $165,000 would be payable to the employee and his counsel as a lump sum and the remaining $60,000 would be payable on a biweekly or a monthly basis over the following five years. The trial court held a hearing (the transcript of which does not appear in the record) on whether to approve the settlement agreement and subsequently entered a judgment approving and incorporating that agreement; that judgment recited, among other things, that the employee “has been informed of his eligibility to apply for Ordinary Disability or Extraordinary Disability Benefits” (emphasis added).
On December 20, 2013, the employee executed an “Application for Disability Benefits” that was addressed to the “Members of the Retirement and Relief Pension Board.” The application contained the following pertinent provisions:
“In accordance with the provisions of Article VI, Sections 7 and 8, of Act No. *335 2006-338, City of Birmingham Relief Pension Law, I hereby make application for disability benefits. As an applicant for these benefits, I am aware-that the Pension Board shall have the right to require an examination by one or more physicians on behalf of the Board- at its expense as required by law.
[[Image here]]
“I am aware that if I am granted an Extraordinary Disability Pension (Job Related Disability), there will be a set off with any Workers^] Compensation benefits that I receive. I confirm that I have been made aware that there is a dollar-for-dollar adjustment between my pension and my worker[s’] compensation benefit, and I have been advised to consult a legal professional if I have further questions in regard to this adjustment.
“I verify that I understand and agree with the above said terms and conditions.”
The employee also executed a document labeled “Notice to Applicants Applying for an Extraordinary Disability Pension” that contained the following pertinent .provisions (emphasis in original):
“Please note if your application for Extraordinary Disability is approved by the City of Birmingham Retirement and Relief System Board of Managers, your Extraordinary Disability benefit shall be offset, dollar for dollar, by the amount of your Worker[s’] Compensation benefit as set forth in the City of Birmingham Retirement and Relief System Pension Law, specifically, Act Number 2009-780 which reads in pertinent part:
such disabled participant shall be entitled to a monthly allowance from the fund equal .to seventy [percent] (70%) of his/her monthly salary at the time of the accident which resulted in such total disability, subject to the offset for any Workers’] Compensation benefit or other such disability payable by the City as set forth hereafter’
“This notice is informing you that should you receive a Workers’] Compensation benefit or other such disability benefit payable by the City of Birmingham, your Extraordinary Disability benefit paid by the City of Birmingham Retirement and Relief System shall be (1) offset in full, dollar for dollar, before any further Extraordinary Disability benefits are paid to you and thereafter (2) reduced dollar for dollar by. the amount of your Workers’] Compensation benefit or any other such disability benefit payable by the; City of Birmingham.
“The City of Birmingham Retirement and Relief System is not the City of Birmingham. The City of Birmingham Retirement and Relief System is a separate entity.” ■
In September 2015, approximately 21 months after the trial court’s judgment ratifying the parties’ settlement had been entered, the employee filed a “Motion to Enforce Settlement Agreement” in which he asserted that the City had “unilaterally decided to reduce any available pension benefits owed to the [employee]”; he contended that that alleged conduct on the part of the City was contrary to the settlement agreement and'was also contrary to the holding in Ex parte City of Birmingham, 988 So.2d 1035 (Ala.2008). Attached to the employee’s motion was a printed worksheet labeled “City of Birmingham Retirement and Relief Pension System— Calculation for Extraordinary Disability Benefit,” dated February 25, 2014, indicating that the employee’s “EOD” (i.e., extraordinary disability) pension effective date was February 7, 2014; that his “Gross Extraordinary Disability Benefit” was $2,561.35; that his “Net Extraordi *336 nary Disability Benefit” was $0; and that the employee’s “EOD benefit is subject to future off-sets and/or adjustments for workers’ compensation benefits.”
The City responded to the employee’s motion to enforce by asserting that the City had made all payments agreed upon in the settlement; that the employee had made application for EOD benefits to the City of Birmingham Retirement and Relief Board (hereinafter “the Board”); that the Board was a “separate entity” from the City; that the employee had been informed when he had applied for EOD benefits that those benefits, if approved, would be offset by the City’s workers’ compensation payments; and that the statutes authorizing the setoff were enacted after Ex parte City of Birmingham was decided. The City attached copies of all checks made out to the employee and his counsel since the settlement agreement had been reached, a copy of the employee’s application for EOD benefits and the notice form he had executed in connection therewith, and a copy of Act No. 2009-780, Ala. Acts 2009. The employee filed a reply to the City’s response in which he acknowledged that the pension plan from which he had sought EOD benefits was “totally separate apart from the City’s obligation” but nonetheless contended that the Board’s EOD-benefit-offset right should have been set forth in the settlement agreement.
In December 2015, the trial court entered a judgment in which that court, relying upon the City’s purported inclusion in a proposed draft of the settlement agreement and judgment forms of the recital that “the employee “has been informed of his eligibility to apply for Ordinary Disability or Extraordinary Disability Benefits,” concluded that the silence of the settlement agreement and judgment regarding any right of setoff warranted a conclusion that the City had waived, or was estopped to assert, a right of setoff. The judgment further directed the City to pay, within 30 days, “all EOD benefits due ... from March 12, 2014,” and to make monthly payments thereafter. The City sought and obtained a stay of the trial court’s judgment and appealed to this court, which has jurisdiction to hear appeals arising from workers’ compensation actions, see Ala.Code 1975, § 12-3-10.
The City argues that the trial court erred, in the guise of “enforcing” the judgment ratifying the parties’ settlement, to the extent that it required the City to pay EOD pension benefits to the employee; rather, it contends, the entity responsible for paying pension benefits and for effecting the setoff is the Board. The employee, for his part, asserts that the trial court’s enforcement judgment against the City was proper because, he says, the Board is merely an “instrumentality” of the City. Assuming, without deciding, that the employee’s assertion of that argument for the first time in his appellate brief is timely, we conclude that it is without merit. Although we have been directed by the parties to no black-letter definition of “instrumentality,” this court, in Harris v. Ethics Comm’n of Alabama, 585 So.2d 93 (Ala.Civ.App.1991), assessed the scope of ethics laws that reached elected and appointed officials of municipalities and their “instru-mentalities”; in that case, we noted with approval the trial court’s reasoning to the effect that a municipal industrial development board (“IDB”) did amount to an instrumentality of its parent municipality because (a) the pertinent enabling statutes “require[d] that an IDB’s existence be dependent on the express approval and consent of the municipality”; (b) the legislature delegated the choice of IDB members to the governing body of the parent municipality; and (c) the legislature mandated by statute that, upon dissolution of an *337 IDB, all IDB funds and properties and any subsequent profits would vest in its parent municipality. 585 So.2d 93 at 95.
In this case, the enabling laws pertaining to the municipal pensions afforded to the employees of the City are now codified, as amended, at Ala.Code 1975, § 45-37A-51.100 et seq. We infer from those laws (a) that they “comprise a retirement and relief system for officers and employees of each and every ... city of the State of Alabama” that has or has ever had a sufficient population to attain Class 1 status (§ 45-37A-51.101), which class includes the City (see generally Phalen v. Birmingham Racing Comm’% 481 So.2d 1108, 1114 (Ala. 1985)), without any reference to consent or approval of that municipality; (b) that no more than three members of the nine-member Board are elected officials of the City or selected by elected officials of the City (see Ala.Code 1975, § 45-37A-51.131); and (c) that the pension fund administered by the Board is in perpetuity to be kept in a separate account (see Ala.Code 1975, § 45-37A-51.137(b)). Moreover, the legislature expressly provided for a means by which the decisions of the Board denying benefits to claimants could be judicially reviewed via mandamus petitions designating the Board or its members as respondents. See Ala.Code 1975, § 45-37A-51.139. We thus agree with the City that the Board is, in fact, a separate entity from the City — just as the employee acknowledged in his pension filings — and that the Board is not, as the employee contends, a mere “instrumentality” of the City. Accord Board of Trs. of Emps. Ret. Sys. of Montgomery v. Talley, 286 Ala. 661, 664, 244 So.2d 791, 794 (1971) (holding that trial court lacked jurisdiction to declare Montgomery municipal ordinance unconstitutional when only retirement-system board was named as defendant, stating that the board “does not constitute the City of Montgomery, the governmental body which adopted the ordinance,” and that “[i]t is clear that they are separate and distinct bodies”).
In this case, the City made a showing that, as of the date of the employee’s motion to enforce, the City had fully complied with the financial obligations of the workers’ compensation judgment that had ratified the parties’ settlement agreement. That a separate entity from the City, i.e., the Board, did or did not pay additional pension benefits as to which the judgment merely reserved the employee’s right to apply (i.e., not a right to receive) does not, in our view, present an issue properly within the trial court’s inherent enforcement power. See City of Gadsden v. Boman, 104 So.3d 882, 888 (Ala.2012) (reversing judgment of trial court compelling municipality to provide medical coverage to 19 municipal employees and retirees notwithstanding state insurance board’s decision that coverage would not be afforded; board members were not made parties and were not bound by judgment). Similarly, we cannot agree with the trial court that, to the extent that the City represented that the employee could “apply for” EOD benefits, its conduct is susceptible to a conclusion that it is estopped to deny the employee’s entitlement to receive EOD benefits (see Smith v. State Farm Mut. Auto. Ins. Co., 952 So.2d 342, 351 (Ala. 2006) (listing elements of estoppel, including the element that “the actor with knowledge must communicate misleadingly”)). Finally, the City, being a separate entity from the Board (which controls the pension system and the fund from which the employee has claimed benefits), cannot properly be said to have “waived” any right the Board might have to assert that the employee’s EOD pension benefits are subject to a setoff under Ala.Code 1975, *338 § 45-37A-51.226(b) (partially codifying Act No. 2009-780, Ala. Acts 2009). See Home v. TGM Assocs., L.P., 56 So.3d 615, 624 (Ala.2010) (waiver consists of voluntary relinquishment of a party’s known right).
Based upon the foregoing facts and authorities, the trial court’s enforcement judgment directing the City to, pay EOD pension benefits to the employee is reversed, and the cause is remanded with instructions to the trial court to render an order denying the employee’s motion to enforce.
REVERSED AND REMANDED WITH INSTRUCTIONS.
THOMPSON, P.J., and THOMAS, MOORE, and DONALDSON, JJ., concur.

. Regarding the applicability of Alabama's workers’ compensation laws to the City, see generally City of Birmingham v. George, 988 So.2d 1031, 1032-34 (Ala.Civ.App.2007), aff'd, 988 So.2d 1035 (Ala.2008),